**Appeal No. 2014-1421**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**
_____

GUZIK TECHNICAL ENTERPRISES, INC.

*Plaintiff-Cross Appellant,*

v.

WESTERN DIGITAL CORPORATION, WESTERN DIGITAL
TECHNOLOGIES, INC., WESTERN DIGITAL (FREEMONT), INC.,
WESTERN DIGITAL (THAILAND) COMPANY LTD.,
WESTERN DIGITAL (MALAYSIA) SDN.BHD

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the Northern District of
California in Case No. 11-cv-03786
The Honorable Magistrate Judge Paul S. Grewal

_____

**CORRECTED NON-CONFIDENTIAL BRIEF OF PLAINTIFF-
APPELLANTS GUZIK TECHNICAL ENTERPRISES, INC.**

_____

DANIEL E. ALBERTI
A. MARISA CHUN
ERIC W. HAGEN
MCDERMOTT WILL & EMERY, LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
650.815.7400

*Attorneys for Plaintiff-Appellant*
GUZIK TECHNICAL ENTERPRISES,
INC.

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiff-Appellant Guzik Technical Enterprises, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

**Guzik Technical Enterprises, Inc.**

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Named Party, Guzik Technical Enterprises, Inc., is the real party in interest**

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**None.**

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**McDermott Will & Emery LLP**: Daniel E. Alberti, A. Marisa Chun, Eric William Hagen, Fabio Elia Marino, Teri H.P. Nguyen, M. Miller Baker, Clint A. Carpenter

**Kilpatrick Townsend and Stockton LLP**: James G. Gilliland, Scott E. Kolassa, Anne Marie Rogaski (no longer with Kilpatrick firm), David Louis Shaul, Erwin Lee Cena, Matthew Joseph Meyer, Megan M. Chung, Robert D. Tadlock, William Edward Mosley

**Bergeson, LLP**: Daniel J. Bergeson, Melinda Mae Morton, Jaideep Venkatesan

## **CERTIFICATE OF INTEREST**
### **(continued)**

**Otteson Law Group/Agility IP Law, LLP**: James R. Farmer, James Carl Otteson, Michelle Gail Breit


Dated:    <u>July 7, 2014</u>                    <u>*/s/ A. Marisa Chun*</u>
          Date                            Signature of counsel
                                          A. Marisa Chun

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................. 1

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF THE ISSUES ....................................................................... 2

STATEMENT OF THE CASE ........................................................................... 2

    I.      THE LITIGATION ............................................................... 3

    II.    THE PARTIES' SETTLEMENT DISCUSSIONS ............................. 4

    III.   THE TERM SHEET ............................................................. 5

           A.    The Parties' Agreement to Work in Good Faith to Draft a Settlement Agreement ................................................. 6

           B.    The Term Sheet's Provision Regarding "Purchase Order Scope and Pricing" ................................................. 7

           C.    The Parties Work in Good Faith to Draft a Settlement Agreement .............................................................. 10

                1.    Disagreement Between the Parties Emerge Within 48 Hours .................................................................. 10

                2.    The December 2, 2013 Status Conference and the Court's Grant of Additional Time to Reach Agreement ................................................................. 11

                3.    No Settlement Agreement Is Finalized or Executed ..... 12

    IV.   WESTERN DIGITAL'S MOTION TO ENFORCE SETTLEMENT ................................................................. 15

SUMMARY OF THE ARGUMENT ................................................................. 17

STANDARDS OF REVIEW ............................................................................. 19

ARGUMENT ..................................................................................................... 21

-i-

## TABLE OF CONTENTS
### (continued)

I.    THE DISTRICT COURT ERRED IN IMPOSING THE BURDEN OF PROVING THAT A SETTLEMENT AGREEMENT EXISTED ON THE NON-MOVING PARTY, GTE ................................................................................21

    A.    California Contract Law Places the Burden of Proof on the Party Who Asserts an Agreement Exists ...........................22

    B.    The District Court Applied Inapplicable Federal Law, Not State Law, Regarding the Burden of Proof......................25

II.    THE TERM SHEET IS NOT A VALID AND ENFORCEABLE SETTLEMENT AGREEMENT..........................31

    A.    The Term Sheet Is Merely an Agreement to Agree or to Negotiate in Good Faith, Not an Enforceable Settlement Agreement...............................................................................31

    B.    The District Court Erred in Concluding that the Term Sheet Contains All Material Terms and that the Material Terms Were Sufficiently Definite............................................33

        1.    The Scope and Pricing of Future Purchases Was a Material Term ................................................................34

        2.    The District Court's Interpretation and Application of *Facebook* Were Flawed............................................36

        3.    The District Court Erred in Concluding that the Material Terms Regarding the Items to Be Purchased and Their Prices Were Sufficiently Definite ........................................................................40

    C.    The District Court's Conclusions Regarding the Purchase Order Scope Provision Cannot Be Reconciled with the Extrinsic Evidence .................................................................45

## TABLE OF CONTENTS
### (continued)

**Page**

III.  THE DISTRICT COURT'S DETERMINATION THAT THE TERM SHEET WAS AN ENFORCEABLE SETTLEMENT AGREEMENT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE .....................................................................................47

    A.  The District Court Impermissibly Relied Upon Attorney Argument ..............................................................................47

        1.  Western Digital Submitted Attorney Argument, Not Evidence, Regarding the V-2002 Testers ...............49

        2.  Western Digital Submitted Attorney Argument, Not Evidence, Regarding Non-Recurring Engineering (NRE) Goods.............................................51

        3.  Western Digital Submitted Attorney Argument, Not Evidence, Regarding Repairs and Maintenance.....52

    B.  Alternatively, this Court Should Reverse the Order and Remand for an Evidentiary Hearing ........................................55

CONCLUSION ......................................................................................56

### CONFIDENTIAL MATERIAL OMITTED

Material has been deleted from pages 4-13, 16, 32, 34-36, 39, 42-45, and 50-53 of the non-confidential Opening Brief of Plaintiff-Appellant Guzik Technical Enterprises, Inc. ("GTE").  The material omitted from these pages generally contains confidential business information set forth in writings as part of the parties' settlement negotiations which one or both parties deem subject to protection pursuant to the protective order entered January 17, 2012.  Specifically, at pages 4-7, 10-11, 13, 16, 32, 34-36, 39 (footnote 6), 44-45, 50, and 53, omitted

**TABLE OF CONTENTS**
(continued)

material references dollar amounts and corresponding time periods for settlement or other payments to GTE, including in connection with future purchase order commitments.   At pages 7-13, 42-45, and 51-52, omitted material consists of quoted proposed provisions regarding the scope and pricing of future orders discussed during settlement negotiations or information describing the same which was redacted in the record below.   At page 44, omitted material also references the cost and pricing information for certain goods discussed in the 2013 price list.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Atlantic Richfield Co.*,
  25 Cal. 4th 826 (2001) ...............................................................................25

*Beck v. American Health Grp. Int'l, Inc.*,
  211 Cal. App. 3d 1555 (1989) ....................................................................31

*Beriont v. GTE Labs., Inc.*,
  535 F. App'x 919 (Fed. Cir. 2013) ........................................................20, 26

*Callen v. Pennsylvania R. Co.*,
  332 U.S. 625 (1948).....................................................................................27

*Callie v. Near*,
  829 F.2d 888 (9th Cir. 1987) ...........................................................20, 22, 34

*Citizens Utils. Co. v. Wheeler*,
  156 Cal. App. 2d 423 (1958) .......................................................................39

*In re City Equities Anaheim, Ltd.*,
  22 F.3d 954 (9th Cir. 1994) ...........................................................22, 25, 55

*Copeland v. Baskin Robbins U.S.A.*,
  96 Cal. App. 4th 1251 (2002) ................................................................31, 33

*Delgado v. Heritage Life Ins. Co.*,
  157 Cal. App. 3d 262 (1984) .......................................................................21

*Director, Office of Workers' Compensation Programs v. Greenwich
  Collieries*,
  512 U.S. 267 (1994).....................................................................................23

*Elcommerce.com, Inc. v. SAP AG*,
  745 F.3d 490 (Fed. Cir. 2014) .........................................................45, 47, 48

*Elite Show Servs., Inc. v. Staffpro, Inc.*,
  119 Cal. App. 4th 263 (2004) ................................................................39, 40

*Facebook Inc. v. Pacific Northwest Software, Inc.*,
  640 F.3d 1034 (9th Cir. 2011) ....................................................................*passim*

*Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.*,
  940 F.2d 550 (9th Cir. 1991) ...........................................................19, 24, 29, 30

*Gregory v. Hamilton*,
  77 Cal. App. 3d 213 (1978) ................................................................................24

*Harris v. Dep't of Veterans Affairs*,
  142 F.3d 1463 (Fed. Cir. 1998) .........................................................................27

*Holland v. United States*,
  621 F.3d 1366 (Fed. Cir. 2010) .........................................................................20

*Holt v. MacArthur*,
  No. 11cv1502-GPC, 2013 U.S. Dist. LEXIS 185899 (S.D. Cal.
  Dec. 17, 2013)......................................................................................................24

*Insurance Co. of Pa. v. Associated Int'l Ins. Co.*,
  922 F.2d 516 (9th Cir. 1991) ..............................................................................21

*Jeff D. v. Andrus*,
  899 F.2d 753 (9th Cir. 1989) ..............................................................................20

*Johnson v. Fankell*,
  520 U.S. 911 (1997)..............................................................................................39

*Klamath Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir. 1999) ............................................................................21

*Kruse v. Bank of America*,
  202 Cal. App. 3d 38 (1988) ................................................................................32

*Ladas v. California State Auto. Ass'n*,
  19 Cal. App. 4th 761 (1993) ...............................................................................41

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
  919 F.2d 1579 (Fed. Cir. 1990) .........................................................................48

*Lindsay v. Lewandowski*,
  139 Cal. App. 4th 1618 (2006) ...........................................................................34

*Madey v. Duke Univ.*,
 307 F.3d 1351 (Fed. Cir. 2002) ...........................................................19

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
 134 S. Ct. 843 (2014) ...............................................................23, 26, 30

*MetroNet Servs. Corp. v. US West Commc'ns*,
 329 F.3d 986 (9th Cir. 2003) .........................................................22, 32

*Molski v. Foley Estates Vineyard and Winery, LLC*,
 531 F.3d 1043 (9th Cir. 2008) ............................................................19

*Olam v. Congress Mortg. Co.*,
 68 F. Supp. 2d 1110 (N.D. Cal. 1999) ............................................23, 24

*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*,
 69 Cal. 2d 33 (Cal. 1968) ...........................................................41, 43, 44

*Parson v. Bristol Dev. Co.*,
 62 Cal. 2d 861 (Cal. 1965) ..................................................................21

*Perfumebay.com Inc. v. eBay, Inc.*,
 506 F.3d 1165 (9th Cir. 2007) ............................................................20

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
 77 F.3d 309 (9th Cir. 1996) ................................................................31

*S & T Mfg. Co. v. Cnty. of Hillsborough*,
 815 F.2d 676 (Fed. Cir. 1987) ............................................................22

*Seltzer v. Heads & Tails, Inc.*,
 No. 10cv1245 JLS, 2012 U.S. Dist. LEXIS 34382 (S.D. Cal. Mar.
 14, 2012) ..............................................................................................24

*Southern Cal. Fed. Sav. & Loan Ass'n v. United States*,
 422 F.3d 1319 (Fed. Cir. 2005) ..........................................................21

*Southern Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*,
 74 Cal. App. 4th 1232 (1999) .............................................................41

*Taylor v. Dep't of Interior*,
 34 F. App'x 766 (Fed. Cir. 2002) ........................................................26

*Terry v. Conlan*,
  131 Cal. App. 4th 1445 (2005) ...........................................................................40

*Tiernan v. Devoe*,
  923 F.2d 1024 (3d Cir. 1991) ...........................................................................25

*United States v. Ward Baking Co.*,
  376 U.S. 327 (1964)...........................................................................................22

*Weddington Prods., Inc. v. Flick*,
  60 Cal. App. 4th 793 (1998) .....................................................................*passim*

**Codes and Statutes**

28 U.S.C. § 1295 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1338(a) ...............................................................................................1

28 U.S.C. § 1367(a) ...............................................................................................1

45 U.S.C. § 51 ......................................................................................................27

Cal. Civ. Code § 1580 ..........................................................................................42

Cal. Civ. Code § 3390(5) ......................................................................................41

Cal. Evid. Code § 500 ...........................................................................................23

**Rules**

Fed. R. App. P. 4(a)(7)(B) ......................................................................................1

Fed. R. Civ. P. 58 ...............................................................................................1, 3

**Other Authorities**

1 B.E. Witkin, *Summary of California Law, Contracts* § 137 (10th ed.
    2005) ................................................................................................................38

Judicial Council of California Jury Instructions (2014) .........................................23

## STATEMENT OF RELATED CASES

There is and has been no other appeal in this case.[1]  Plaintiff-Appellant Guzik Technical Enterprises, Inc. ("GTE") is not aware of any other case that will directly affect, or be directly affected by the Court's decision in this case.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 1367(a).  This Court has exclusive jurisdiction under 28 U.S.C. § 1295(a)(1).

GTE timely filed its Notice of Appeal on April 14, 2014.  The Order Granting Motion to Enforce Settlement Agreement ("Order"), which is the Order appealed from, is a final decision for purposes of 28 U.S.C. § 1295, because it disposed of all remaining claims and issues in this case.  *See generally* Fed. R. App. P. 4(a)(7)(B) (even if district court has not entered judgment in a separate document under Fed. R. Civ. P. 58, this "does not affect the validity of an appeal from" an order that otherwise finally disposes of the case).  Out of an abundance of caution, the parties jointly requested that the Court dismiss all claims and counterclaims with prejudice, subject to GTE's reservation of right to appeal such final judgment, including the Order, and enter judgment.  (A705-06).  The Court

---

[1] In the event that GTE prevails in this appeal, GTE expressly reserves its right to appeal the district court's merits-related orders, such as the district court's summary judgment orders, after any trial that may take place in this action on remand.

did so on May 19, 2014. (JA710-11). GTE filed an Amended Notice of Appeal on June 6, 2014, to reference the Final Judgment. (A712-13).

## STATEMENT OF THE ISSUES

**1.**    Did the district court err in granting Western Digital's motion to enforce settlement, by imposing on plaintiff GTE, the non-moving party, the burden of proving that the term sheet was not an enforceable settlement agreement?

**2.**    Did the district court err in granting Western Digital's motion to enforce settlement, by finding that the "Agreed Terms" signed by the parties ("term sheet") was an enforceable settlement agreement, even though: (a) it was an agreement to agree or, at most, an agreement to negotiate in good faith a settlement agreement; and (b) necessary material terms were missing or too indefinite to be enforced, thereby rendering the so-called agreement fatally uncertain and unenforceable?

**3.**    Did the district court err in granting Western Digital's motion to enforce settlement, when substantial evidence did not support a determination that an enforceable settlement agreement existed and, therefore, the district court impermissibly relied upon attorney argument in granting the motion?

## STATEMENT OF THE CASE

Guzik Technical Enterprises, Inc. ("GTE") was founded in 1982 by Dr. Nahum Guzik. Dr. Guzik developed innovative testing equipment and associated software used by leading disk drive manufacturers to test disk heads and media

when manufacturing hard drives to ensure optimal performance. (A117-18). Dr. Guzik and GTE hold over 65 patents on several electronic, mechanical, and optical innovations used in GTE's testing equipment. (A118). Among GTE's innovations is the use of servo positioning in head test equipment, dramatically increasing the performance of its head testing equipment. (*Id.*). GTE patented these innovations in U.S. Patent No. 6,023,145 (the "'145 Patent"), entitled "Head And Disk Tester With A Thermal Drift-Compensated Closed-Loop Positioning System," and U.S. Patent No. 6,785,085 (the "'085 Patent"), entitled "Multi-Frequency Servo Bursts in Magnetic Disk Memory System." (*Id.*; A131-42; A144-62).

Defendant-Appellee Western Digital Corporation, a manufacturer of hard drives, has been a GTE customer since 1992. (A115).

## I.   THE LITIGATION

On August 1, 2011, Guzik Technical Enterprises (GTE) filed suit against Western Digital Corporation, Western Digital Technologies, Inc., Western Digital (Fremont), Inc., Western Digital (Thailand) Company Ltd., and Western Digital (Malaysia) SDN.BHD (collectively, "Western Digital") in the United States District Court for the Northern District of California for patent infringement, breach of contract, and trade secret misappropriation. (A114-29). The patent infringement claims asserted that Western Digital had infringed two patents: the '145 patent (A131-42) and the '085 patent (A144-62). The dispute arose out of

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

GTE's discovery that Western Digital had without authority created at least two disk head testers using GTE's '145 and '085 patents, as well as GTE's confidential and proprietary information, in violation of the 1996 Master Agreement and 2004 Master Agreement between the parties, which prohibit, *inter alia*, the "reverse engineering, decompiling, disassembling, or deriving of source code used to operate GTE Test Systems." (A119-23).

## II.    THE PARTIES' SETTLEMENT DISCUSSIONS

The parties began settlement discussions in the summer of 2013. Around July, Mr. Rubik Babakanian, Western Digital's Senior Vice President and Chief Procurement Officer contacted Dr. Guzik to discuss a potential resolution of this lawsuit. (A597 ¶ 2).

On November 15, 2013, the parties and their lawyers held an all-day meeting to further discuss the possibility of settlement. (A597 ¶ 3). The parties agreed to a $⬛⬛⬛ upfront payment and future purchase order commitments totaling $⬛⬛⬛ by Western Digital to GTE over the course of ⬛⬛⬛. (*Id.*) The parties, however, could not reach agreement as to what purchases would count towards the $⬛⬛⬛ purchase commitment. (*Id.*)

Outside the presence of lawyers, on November 22, 2013, Dr. Guzik and Mr. Babakanian held another all-day meeting. (A597 ¶ 4). This time, Dr. Guzik and Mr. Babakanian reached agreement as to the goods which, if purchased, would

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

count towards the $ [REDACTED] purchase order commitment by creating a list of goods and services, which was called the "Guzik System Pricing 2013" price list ("2013 price list" or "price list"). (*Id.*; A601). They discussed goods and services on the price list and agreed to add GTE's RWA 4000 (4Gbit) system as an offering on the price list (indicated by a double-asterisk on the price list), consistent with their understanding that the price list would reflect the universe of goods and service purchases that would count towards Western Digital's purchase commitment. (A597-98 ¶ 4; A601). However, no final agreement on an overall settlement was reached on November 22, due to disagreement over amendments to GTE's 2004 Master Purchase Agreement. (A597-98 ¶ 4; A119-20).

In the days leading up to the December 2, 2013 trial date, the parties continued to negotiate, exchanging emails and red-lined drafts of the potential terms to be included in any settlement. (A274-358).

## III.   THE TERM SHEET

Facing a jury trial set to begin on Monday, December 2, 2013, the parties executed a term sheet on the eve of trial, to memorialize their progress towards settling the case. It was signed by Dr. Guzik on Friday, November 29, 2013 (A199-206) and by Western Digital on Saturday, November 30, 2013. (A370).

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

## A.    The Parties' Agreement to Work in Good Faith to Draft a Settlement Agreement

The term sheet expressly states: "***The parties will work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary*** to effect the above terms." (A206) (emphasis added).   The term sheet also states that Western Digital's upfront $▮▮▮▮▮ "Settlement Payment" is contingent on the execution of a separate settlement agreement: "Payment to be made within 30 days ***after execution*** of (i) a settlement agreement, and (ii) a purchase order agreement." (A205) (emphasis added).

Western Digital's counsel, Mr. Lumish, e-mailed the copy of the term sheet as executed by Western Digital to GTE's counsel on Saturday, November 30. Mindful that the parties were "working on settlement papers" yet had not reached agreement, Western Digital's counsel's cover email stated:

> Can we agree to submit something to the court today saying we have a signed term sheet, that ***we are working on settlement papers*** and ***expect*** to have them on file before trial starts, but asking to have the trial taken off calendar either way ***in case, despite good faith efforts, all of the settlement papers are not in final*** by Monday morning?

(A370) (emphasis added).   Later that day, the parties advised the Court of the execution of the term sheet.  Although styled as a "Joint Notice of Settlement," it reflected the parties' recognition that more work was to be done and that

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

memorializing the term sheet in further agreements was an expectation, not a

certainty:

> The parties hereby notify the Court that they have reached agreement
> in a signed term sheet, and jointly request for the trial to be taken off
> calendar **while they memorialize the term sheet in further**
> **agreements**.  The parties **expect** this process to result in a dismissal
> shortly.  The parties will appear in court on Monday, December 2,
> 2013 at 9 a.m., to further discuss with the Court.

(A163-64) (emphasis added).

### B.    The Term Sheet's Provision Regarding "Purchase Order Scope and Pricing"

A critical and heavily negotiated provision in the term sheet addressed what

purchases would count towards Western Digital's $███████ purchase order

commitment.

Following the November 22 meeting, at which the principals of the two

parties had discussed and modified the contents of the 2013 price list to include the

RWA 4000 (4Gbit) system, the parties worked diligently on a number of issues,

including drafting a mutually-agreeable provision regarding the scope and pricing

of future purchase orders, as detailed below:

| Date / Time | Communication |
| --- | --- |
| 11/22/2013, 10:03 p.m. | Western Digital sends GTE redline of Purchase Order Agreement, proposing:<br>████████████████████████████████ |
| 11/23/2013, 7:00 p.m. | GTE responds with a term sheet that includes a section |

| Date / Time | Communication |
|---|---|
| | titled, "Purchase order scope and pricing," under which GTE limits the purchase order scope to: |
| 11/25/2013, 3:10 p.m. | Western Digital responds with edits to secure price caps: |
| 11/26/2013, 3:32 p.m. | GTE in turn responds by striking through portions of Western Digital's language and adding some new language: |

On November 26, 2013, at 11:26 p.m., Western Digital responded with further edits that attempted to expand the scope of the purchase orders beyond the 2013 price list:



(A336) (original deletions and additions in redlines).

Significantly, on November 29, GTE rejected Western Digital's proposed edits:





 (A347) (original deletions and additions in redlines).

Western Digital accepted GTE's edits above, which had struck Western Digital's proposed language to expand beyond the 2013 price list goods and services that would count towards the purchase order commitment.  (A360). GTE's final proposed language was adopted in the term sheet.  (A199).   Thus, after days of intense negotiation, the parties executed the term sheet on November 29 and 30, with the following "Purchase order scope and pricing" provision:



(A199).

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

### C.    The Parties Work in Good Faith to Draft a Settlement Agreement

### 1.    Disagreement Between the Parties Emerge Within 48 Hours

In the 48 hours following the execution of the term sheet on November 29 and 30, the parties worked on the four agreements necessary in order to settle the case: a Confidential Settlement Agreement, a Purchase Order Agreement, a Non-Disclosure Agreement, and a First Amendment to the 2004 Master Purchase Agreement.  GTE worked diligently to resolve a complicated dispute, involving a complex business arrangement, as evidenced by the extensive exchange of emails and drafts between counsel.  (A371-539).   However, the parties did not reach agreement on material terms, including how $██████ of the $██████ consideration would be calculated, including which future purchases, of which goods and services, by which entities, in which years, would apply, with what exclusions.

On November 30, GTE sent to Western Digital its initial draft of the Purchase Order Agreement, consistent with the negotiated term sheet:



(A388).  However, Western Digital suddenly expressed surprise about the purchase orders, contending that "[i]t appears to limit the purchases that count towards the

████████ only to those things on the price list, but we have agreed all along that anything Western Digital buys – goods, services, etc. – other than NRE applies to the spend." (A404). It thus renewed its proposal to have revisions "concerning the scope of purchases included in the PO agreement going beyond just what is listed in the price list." (A411). Western Digital also struck all references to the 2013 price list (which was attached to the term sheet), proposing instead, ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ (A433). But GTE had never agreed to this in the term sheet. Evidently, there was no meeting of the minds on this key issue of scope.

## 2. The December 2, 2013 Status Conference and the Court's Grant of Additional Time to Reach Agreement

On December 2, 2013, what would have been the first day of trial, the district court held a status conference. (A168). GTE's counsel explained that the parties had "reached a term sheet," but had not yet finalized agreements:

> Ms. Rogaski: Well, Your Honor, we reached a term sheet signed by the parties Friday night, Saturday morning. So gave ourselves about 48 hours to try to get this completely wrapped up so we could report to you this morning that it was completely wrapped up.

> We still have a few issues we're working on on the ancillary agreements, but we are still talking and getting close, but we just need probably hopefully another day or so to get things wrapped up.

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

> So we wanted to alert you over the weekend that we had reached an agreement with respect to the main terms and are just really hammering out the details at this point.

(A168, 3:24-4:10).  Western Digital's counsel confirmed that this was all accurate. (A168, 4:14-16).

After reviewing the term sheet, the district court vacated the December 2 trial date and gave the parties two weeks to work out the various agreements and file a dismissal.  (A169, 6:17-23).  In doing so, the court noted that "you all are very close" and recognized the possibility that the parties might fail to reach agreement: "If you haven't reached an agreement because you've hit a fundamental snag in negotiating the final terms, let me know that, too."  (A169, 7:5-7).  Thus, in dismissing then-pending motions, the court did so "without prejudice," explaining that in the "highly unlikely event that a trial would ultimately be required, the parties would be free to resume their motion practice and present their motion."  (A169, 6:3-8).

### 3.    No Settlement Agreement Is Finalized or Executed

After the December 2 status conference, the parties continued to negotiate. However, as Western Digital continued to expand the scope of the GTE goods and services that could be included as part of the future purchase orders, disagreement only grew.  For example, on December 3, notwithstanding GTE's counsel's position to the contrary (A472-73) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

██████████████████████████████████, Western Digital further proposed

that the amount paid related to certain repairs by GTE count.  (A555-56).  Then on

December 6, Western Digital proposed that all repairs count, except ████████

████████████████████████████████  (A571-72).

At the time the parties appeared before the court on December 2, GTE's

proposed language for the Purchase Order Agreement made clear that products

GTE makes for other customers and that are subject to customer restrictions would

not suddenly become accessible to Western Digital to count towards its purchase

order commitment.  (A526) (excluding goods, services and software that GTE

develops for *other* customers and which are subject to "customer restrictions").

But later, Western Digital expanded the scope to include a provision that would

allow Western Digital and its affiliates ████████████████████████████

███████████████████████████████████████████████████

██████  . . . ."  (A556; A572).  The lack of agreement regarding what purchases

would count toward the $██████  obligation was so great that Dr. Guzik wrote

directly to Western Digital's president, Jim Murphy, explaining that GTE could not

agree to Western Digital's attempts to position itself in "a special/advantageous

position comparing to other Guzik customers" and gain "unjustified privilege over

other companies."  (A603).  This dispute was never resolved.

By December 6, GTE was concerned that the parties, through their counsel, had created unnecessary complexity that distorted the original goals of the term sheet. (A599 ¶ 9). Still committed to settling the case, Dr. Guzik contacted Mr. Babakanian and Mr. Murphy and provided them with a proposed 9-point Settlement Agreement (A603-05), which was intended to offer certain concessions to Western Digital while preserving aspects of the term sheet (A599 ¶ 9). The parties did not make progress after this, and the contemplated Confidential Settlement Agreement, Purchase Order Agreement and related agreements were never finalized nor executed.

The Court held a status conference on December 16, and Western Digital's counsel acknowledged the lack of agreement:

> MR. LUMISH: So there – there's a couple orders of business, and the first, I think the most important for Your Honor is, *we have a disagreement over whether this case is formally settled* by the Settlement Agreement we tendered to Your Honor several Mondays ago…

(A229:16-20) (emphasis added). GTE's counsel likewise emphasized GTE's position that the term sheet "was not a Settlement Agreement." (A231:4-8). And the Court acknowledged as much: "I also understand you [GTE's counsel, Mr. Alberti] believe that there is no Settlement Agreement to enforce . . . ." (A233:1-5). The fact that the term sheet did not mature into a final settlement, while unfortunate, was not unforeseeable. Indeed, as the district court observed, "this

- 14 -

happens, and this will not be the first, it will not be the last, time the court has to step in . . . ." (A236:6-7).

## IV.    WESTERN DIGITAL'S MOTION TO ENFORCE SETTLEMENT

On December 27, 2013, Western Digital filed its motion to enforce settlement. (A106-07; A178-92). Other than a declaration from its counsel, Western Digital submitted little evidence in support of its motion, such as the term sheet (conspicuously without the 2013 price list attachment), and copies of the transcripts of the two status conferences. (A193-242).

On January 10, 2014, GTE filed its opposition. (A243-65). GTE submitted a declaration from its counsel, attaching twenty-four exhibits, reflecting numerous redlines and contemporaneous documentation of the parties' settlement negotiations, as well as a declaration from Dr. Guzik, also attaching exhibits. (A266-613). On January 20, 2014, Western Digital filed its reply brief, accompanied by a declaration from its counsel and an e-mail between the parties' counsel regarding the proposed 9-point Settlement Agreement. (A614-36). There was no declaration from any Western Digital principal. (*Id.*). A hearing was held on January 23, 2014. (A109; A637-702).

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

On March 21, 2014, the district court granted Western Digital's motion to enforce settlement.[2]  (A1-12).  In doing so, the court found that "[t]he scope of future purchase orders is . . . a material aspect of any settlement agreement to resolve this dispute."  (A7).  Yet, the court concluded that "the details of which future purchase orders count towards the $█████ commitment are not necessary terms of the settlement agreement," reasoning that although the means of achieving the consideration was material, "they are merely terms that affect the total value GTE is to receive from Western Digital throughout their entire business relationship."  (*Id.*)  Further, the court concluded that "[t]he term sheet is sufficiently definite to determine both a breach of the agreement as well as damages arising therefrom," and that "[t]here are not two reasonable interpretations [of the term sheet], as GTE suggests."  (A8).  It therefore concluded that "GTE has not met its burden to show that the term sheet agreement does not contain all the material terms to settle this case or that the material terms are not sufficiently definite."  (A12).

On April 14, 2014, GTE appealed to this Court.  (A704).

On April 29, 2014, Western Digital filed a motion to dismiss action with prejudice.  (A111).  On May 13, 2014, GTE filed its opposition.  (A112).  On May

---

[2] Western Digital's motion is captioned "Motion to Enforce Settlement," while the district court's Order is entitled "Order Granting Motion to Enforce Settlement Agreement."

15, 2014, the parties filed a joint stipulation, whereby Western Digital withdrew its motion to dismiss and the parties requested that the Court enter final judgment in a separate document, subject to GTE's reservation of its right to appeal the Court's final judgment, including the Court's grant of Western Digital's motion to enforce settlement.  (A705-07).  On May 19, 2014, the Court entered final judgment. (A710-11).  On June 6, 2014, GTE filed an amended notice of appeal, referencing the final judgment.  (A712-13).

## SUMMARY OF THE ARGUMENT

A party seeking to establish that a contract exists ordinarily bears the burden of proof.  This well-settled rule holds true even when the contract in question is a purported settlement agreement and when the dispute over the settlement agreement arises in the context of patent litigation.

Here, the district court improperly imposed on the non-moving party, GTE, the burden of proving that the term sheet was not an enforceable settlement agreement.  Under California law, the moving party – namely, Western Digital – bore the burden of proving the existence of a settlement agreement.  The district court, therefore, imposed the burden of proof on the wrong party, in holding that the term sheet is an enforceable settlement agreement.  The district court's legal error should be reversed.  Allowing the decision to stand would violate

fundamental principles of fairness, as it would bind GTE to a "settlement agreement" that does not exist.

The district court also erred in holding that the term sheet is an enforceable settlement agreement. First, the term sheet was merely an unenforceable "agreement to agree" – requiring the parties "to work in good faith to draft . . . a settlement agreement and a purchase order agreement and any other . . . necessary agreements." (A206). Under California law, an agreement to agree is not enforceable. At most, the term sheet bound the parties to negotiate in good faith. Second, necessary material terms were missing or indefinite, such as the identity of the goods and services to be purchased that would count towards the future purchase order commitment. These key omissions meant that a court cannot later determine whether a breach has occurred, order specific performance or award damages. And, even assuming, *arguendo,* that the material terms were all there (which they were not), they were sufficiently ambiguous and indefinite so as to give rise to two reasonably susceptible interpretations. The Order did not analyze the detailed extrinsic evidence submitted by GTE − numerous redlines reflecting GTE's evidence of the parties' intent – which plainly showed that, at a minimum, the term sheet supported GTE's interpretation or, alternatively, that the parties had two reasonably susceptible interpretations.

Finally, the moving party, Western Digital, failed to submit sufficient competent evidence to meet its burden of proving that the term sheet was enforceable. As a result, the district court improperly elevated Western Digital's attorney argument as a basis for key parts of its Order. Indeed, apparently recognizing its failure to proffer competent evidence in support of its motion, Western Digital's counsel even offered at the January 23, 2014 hearing to submit a declaration from its key witness, yet did not do so. (A694:4-20). Despite GTE's objections to Western Digital's attempts to advance attorney argument in lieu of evidence, the district court relied upon Western Digital's attorney argument in concluding that the term sheet was an enforceable settlement agreement. Attorney argument is not evidence. Therefore, the Order declaring the term sheet an enforceable settlement agreement and the dismissal of the underlying claims with prejudice cannot stand, as they are erroneous as a matter of law. The Order should be reversed and the matter remanded for a trial on the merits.

## <u>STANDARDS OF REVIEW</u>

This Court reviews a district court's legal conclusions, such as who bears the burden of proof, *de novo*. *See Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002); *accord Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1046 (9th Cir. 2008) (district court's allocation of the burden of proof is a conclusion of law reviewed *de novo*); *Ferrari, Alvarez, Olsen & Ottoboni v. Home*

*Ins. Co.,* 940 F.2d 550, 555 (9th Cir. 1991) ("Where the district court has misallocated the burden of proof, we review its conclusions *de novo*.").

Whether the parties have entered into a contract or settlement agreement is governed by state law. *See Beriont v. GTE Labs., Inc*., 535 F. App'x 919, 927 (Fed. Cir. 2013) (to the extent state law claims implicate the scope and terms of the settlement agreement, that is a matter of state law) (internal citation omitted).[3] A district court's interpretation of state law is reviewed *de novo*. *Perfumebay.com Inc. v. eBay, Inc*., 506 F.3d 1165, 1172 (9th Cir. 2007).

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Contract interpretation and the trial court's legal conclusions are questions of law that this Court reviews *de novo*. *Holland v. United States*, 621 F.3d 1366, 1374 (Fed. Cir. 2010). Accordingly, "[a]n appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence, where there is no conflict in the evidence,

---

[3] Some cases have held that the enforcement of a settlement agreement in the context of denying a party's request for an evidentiary hearing is reviewed for abuse of discretion. *See, e.g., Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987) (vacating judgment and remanding for evidentiary hearing on the validity of a settlement agreement because only complete agreements can be enforced and appellants' allegations indicated that there had been no meeting of the minds). Under either a *de novo* or abuse of discretion standard, the district court here erred in granting Western Digital's motion to enforce for the reasons discussed herein.

or a determination has been made upon incompetent evidence." *Parson v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865-66 (Cal. 1965) (internal citations omitted). When there is no conflict in extrinsic evidence, the court is not bound by inferences drawn from that evidence by the trial court. *Id.* at 866.

"In particular, the determination of whether contract language is ambiguous is a question of law." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999); *accord Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 270 (1984).

To the extent the district court made any factual findings, these would be reviewed for clear error. *Insurance Co. of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir. 1991). "A finding is clearly erroneous when, despite some supporting evidence, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Southern Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 (Fed. Cir. 2005) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN IMPOSING THE BURDEN OF PROVING THAT A SETTLEMENT AGREEMENT EXISTED ON THE NON-MOVING PARTY, GTE

The district court improperly reversed the burden of proof with respect to Western Digital's motion to enforce the settlement agreement, by imposing on

non-moving party GTE "the burden to prove that the term sheet is unenforceable." (A4:8-9). In so doing, the court mistakenly relied upon Federal Circuit case law arising out of settlements reached between federal agencies and its employees, when it was required to apply California law with respect to this non-patent, contract issue. According to the applicable state law, the burden of proving the existence of a settlement agreement lies with the party seeking to enforce the contract or settlement agreement.

### A. California Contract Law Places the Burden of Proof on the Party Who Asserts an Agreement Exists

District courts have the inherent and equitable power to enforce settlement agreements in cases pending before them. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie*, 829 F.2d at 890. But courts cannot enforce a settlement agreement where none exists; the parties must have actually agreed to the terms of settlement before the court can enforce that settlement. *United States v. Ward Baking Co.*, 376 U.S. 327, 334 (1964).

Whether the parties formed an enforceable agreement is a question of contract law governed by the law of the regional circuit in which the district court sits. *See S & T Mfg. Co. v. Cnty. of Hillsborough*, 815 F.2d 676, 678 (Fed. Cir. 1987). In the Ninth Circuit, the federal courts apply state law regarding the formation and interpretation of contracts in determining whether a legally enforceable settlement agreement was reached. *See*, *e.g., MetroNet Servs. Corp. v.*

*US West Commc'ns*, 329 F.3d 986, 1014-15 (9th Cir. 2003) (settlement agreement not binding under Washington law), *vacated on other grounds*, 540 U.S. 1147 (2004); *Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1119 (N.D. Cal. 1999) (applying California law).  And, it is well-settled that "the burden of proof" is a "'substantive' aspect of a claim."  *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014) (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20-21 (2000)) (holding that a licensee who brought a declaratory judgment action against patentee did not have the burden of persuasion); *Director, Office of Workers' Compensation Programs v. Greenwich Collieries,* 512 U.S. 267, 271 (1994) ("[T]he assignment of the burden of proof is a rule of substantive law . . . .").

In California, "[a] settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts."  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 810 (1998).  The burden of proving the existence of an agreement and its terms rests on the party who asserts an agreement has been reached.  *See* Cal. Evid. Code § 500 ("[A] party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"); Judicial Council of California Jury Instructions (2014), CACI No. 302 (Contract Formation – Essential Factual Elements) (party proving that a contract was created must show, *inter alia*, that the

- 23 -

contract terms were clear enough that the parties could understand what each was required to do); *Ferrari, Alvarez, Olen & Ottoboni*, 940 F.2d at 554 (reversing and remanding, where district court allocated to wrong party the burden of proving that an agreement to resolve liability did not encompass an action for bad faith, as the party relying on the agreement had the burden of proving all the material allegations of the agreement); *Gregory v. Hamilton*, 77 Cal. App. 3d 213, 215, 220 (1978) (in motion to enforce settlement agreement, burden of proving all the material allegations of the agreement rests on the moving party).

As such, on a motion to enforce a settlement agreement, "[t]he moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement." *See Holt v. MacArthur*, No. 11cv1502-GPC, 2013 U.S. Dist. LEXIS 185899, at *17 (S.D. Cal. Dec. 17, 2013); *accord Seltzer v. Heads & Tails, Inc.*, No. 10cv1245 JLS, 2012 U.S. Dist. LEXIS 34382, at *6 (S.D. Cal. Mar. 14, 2012) ("Defendants—who, as the moving parties, bore the burden to establish the requisite intent [to enter agreement]—nevertheless submitted [their motion] based on only the evidence as set forth in the moving papers") (denying motion to enforce settlement); *Olam*, 68 F. Supp. 2d at 1137 n.39, 1140 ("[i]n many settings" on a motion to enforce, "the burden of persuasion would be on the defendants, as the moving parties," while recognizing exception in which the party seeking to rescind a settlement agreement for undue influence would bear the burden).

The well-settled rule that the party moving for summary judgment bears the burden of persuasion also bolsters the conclusion that the district court erred. *See Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 850 (2001). Courts often analogize a motion to enforce a settlement agreement to a motion for summary judgment. *See, e.g., In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th Cir. 1994) (motion to enforce "was akin to a motion for summary judgment"); *Weddington*, 60 Cal. App. 4th at 809-10 (same); *see also Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991) ("The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same – both deprive a party of his right to be heard in the litigation."). All inferences are drawn in favor of the non-moving party. *Aguilar*, 25 Cal. 4th at 843. Here, too, the district court should have placed the burden of persuasion on the moving party, Western Digital, and drawn all inferences in favor of GTE.

## B. The District Court Applied Inapplicable Federal Law, Not State Law, Regarding the Burden of Proof

In its Order, the district court concluded that the non-moving party, GTE, has the burden of proving that the term sheet is unenforceable, based upon authorities that neither party had presented:

> A settlement agreement is binding on the parties, and a party challenging the validity of a settlement agreement carries a heavy burden." [13] [[13] *Taylor v. Dep't of Interior*, 34 F. App'x 766, 767 (Fed. Cir. 2002) (citing *Harris v. Dep't of Veterans Affairs,* 142 F.3d 1463, 1468 (Fed. Cir. 1998)); *accord Callen v. Pennsylvania R. Co.*, 332

- 25 -

U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.").] Because the signed term sheet purports "to resolve all claims pending, or previously pending, in the lawsuit," [14] [[14] Docket No. 533, Exhibit A at 7.] GTE has the burden to prove that the term sheet is unenforceable. [15] [[15] *See Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.").]

(A4). This was reversible error.

First, the district court failed to rely upon California law, which as a matter of law, supplies the proper rule of decision as to who had the burden of proving that the term sheet existed and is enforceable. *See Medtronic, Inc.*, 134 S. Ct. at 849 (burden of proof is a substantive aspect of a claim); *Beriont*, 535 F. App'x at 926-27.

Second, in relying instead upon federal law[4] for its legal conclusion that GTE bore the burden of proof, the district court relied upon inapplicable authorities. Those cases involved settlements between federal agencies and individuals arising out of federal statutory and regulatory schemes.[5] For example,

---

[4] *See* A4 (citing *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948); *Taylor v. Dep't of Interior*, 34 F. App'x 766, 767 (Fed. Cir. 2002); *Harris v. Dep't of Veterans Affairs,* 142 F.3d 1463, 1468 (Fed. Cir. 1998)).

[5] *See, e.g.*, *Taylor*, 34 F. App'x at 767 (on review of the Merit Systems Protection Board's decision dismissing employee's appeal, holding that settlement agreement between federal agency and employee was not ambiguous as to employee's

(continued…)

the district court cited *Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625 (1948), in which a brakeman sued a railroad company under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, for a workplace injury. In affirming the reversal of the jury verdict, the Supreme Court disagreed that the burden of establishing the validity of the settlement under FELA should be placed on the railroad, as Congress had not done so:

> If the Congress were to adopt a policy depriving settlements of litigation of their prima facie validity, it might also make compensation for injuries more certain and the amounts thereof less speculative. But until the Congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake . . . .

*Id*. at 630. This last sentence, quoted in the Order, was dicta, because *Callen* involved a railroad employee's release, not the releases of "others." In any event, even if the dicta stated California contract law, it addresses one's burden with respect to defenses such as fraud or mutual mistake, after a proponent of a contract has already proven that a contract was formed in the first place. Here, Western

---

obligation to retire voluntarily). Similarly, in *Harris*, 142 F.3d at 1463, 1467-69, in reviewing the Board's review of an administrative judge's decision denying the employee's petition to enforce a settlement agreement, this Court observed that the employee bore a "heavy burden" in attacking the validity of a settlement agreement with a federal agency, that the employee could not question the agreement's validity because such allegations could only be entertained in a petition for enforcement, not a petition for review, but, even if the employee could attack the validity, he would not have prevailed.

Digital failed to prove that an enforceable settlement agreement was even formed in the first instance.

Third, the district court's legal conclusion was based on incomplete facts. The court's stated basis for imposing on GTE the burden to prove the term sheet's unenforceability was that "the signed term sheet purports 'to resolve all claims pending, or previously pending, in the lawsuit.'" (A4:6-8) (citing A205). Yet, this ignored the important limiting language immediately thereafter: "The parties will work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the above terms." (A206). The court also ignored other provisions reflecting that the agreement to the "above terms" to resolve all claims pending was conditioned by the "above terms'" themselves. For example, the dismissal and general release to each other was "subject to the settlement payment being made." (A202) ("Dismissal and Release"). And, yet, the settlement payment, in turn, was not obligated to be made until "within 30 days after execution of (i) a settlement agreement, and (ii) a purchase order agreement" – neither of which exist, despite the parties' good faith efforts. (A199).

The burden of proof is important, because it is often outcome-determinative. Thus, the court's error in imposing the burden on the non-movant, GTE, to prove that the term sheet was unenforceable effectively determined the fate of Western

Digital's motion.   Western Digital produced only six exhibits.   GTE produced substantive declarations and twenty-six exhibits, including numerous redlines of the parties' settlement negotiations.   Yet the district court drew inferences in favor of the moving party, Western Digital.   In reversing the burden of proof by relying upon inapplicable federal authorities and incomplete facts, the district court committed reversible legal error.

*Ferrari, Alvarez, Olsen & Ottoboni v. Home Insurance Co*., 940 F.2d 550 (9th Cir. 1991) is instructive.   There, an insured law firm appealed the district court's remand to state court of its lawsuit against its professional liability insurer, based upon the district court's interpretation of a settlement/venue selection agreement.   The Ninth Circuit reversed:

> [W]e conclude that the court misallocated the burden of proof to Home Insurance. In determining whether the venue agreement included bad-faith claims, the court referred only to the transcript of the sealed settlement action. Construing the ambiguities in the transcript against Home Insurance, the district court found that 'Home has failed to show otherwise.' The court noted that the bad-faith claims seemed to be directly related to the underlying declaratory relief action and concluded: 'It is reasonable for this court to infer that bad-faith claims fall within the scope of the venue agreement.' The court did not mention the declarations submitted by both parties or make findings regarding the credibility of the conflicting declarations.
>
> . . . Yet, from the fact that Home Insurance agreed to litigate the declaratory action in state court, the district court concluded that it [also] necessarily agreed to litigate the bad-faith claim. To say that once the Law Firm shows that Home Insurance agreed to litigate *one* claim in state court, it implicitly agreed to litigate all related claims, is to shift the burden of proof.

*Id.* at 554.

The same thing happened here. The district court not only misallocated the burden of proof, but it also cast aside pertinent evidence without explanation. Here, the parties submitted declarations but the Order did not mention the declarations nor make findings regarding the credibility of the declarations or evidence. Instead, by relying in part upon and quoting Western Digital's attorney argument, the district court concluded that GTE's interpretation of the purchase order scope provision was not reasonable. (A8:7-A9:12). Simply because the term sheet purports "to resolve all claims pending, or previously pending, in the lawsuit," the district court overlooked contrary language in the term sheet and concluded that "GTE has the burden to prove that the term sheet is unenforceable," (A4:7-9); *see also* A11:2-4 ("GTE simply has not met its burden to show that the term sheet is so indefinite as to render it an unenforceable settlement agreement). As was true in *Ferrari,* the district court's analysis impermissibly shifted the burden of proof to GTE. The Order should be reversed and remanded on this ground alone. *See Medtronic*, 134 S. Ct. at 852 (reversing and remanding, where this Court imposed the burden of proof on the wrong party).

## II.    THE TERM SHEET IS NOT A VALID AND ENFORCEABLE SETTLEMENT AGREEMENT

### A.    The Term Sheet Is Merely an Agreement to Agree or to Negotiate in Good Faith, Not an Enforceable Settlement Agreement

"[T]here is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement [was] made." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir. 1996); *see also Beck v. American Health Grp. Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562-63 (1989). Thus, "an agreement to make an agreement" is not enforceable. *Beck*, 211 Cal. App. 3d at 1562-63; *but see Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1255 (2002) (recognizing cause of action for breach of agreement to negotiate in good faith).

The district court presumed at the outset that the disputed term sheet was a settlement agreement: "Because the signed term sheet purports 'to resolve all claims pending, or previously pending, in the lawsuit,' GTE has the burden to prove that the term sheet is unenforceable." (A4:7-9) (internal citations omitted). However, the very issue before the district court was whether a settlement agreement had been formed at all. The term sheet in this case contemplates the preparation of a comprehensive settlement agreement and purchase order agreement containing additional terms to be agreed upon by the parties. Indeed, right above the signature block, it states: "The parties will work in good faith to

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the above terms."   (A206). Further, it makes clear that the parties' obligations were contingent on the execution of the settlement agreement that had yet to be drafted.   Specifically, Western Digital's $███████   "Settlement Payment" was not a present commitment, but contingent on the execution of a separate settlement agreement: "Payment to be made within 30 days after execution of (i) a settlement agreement . . . ."   (A199).

Reading the term sheet as a whole, by signing the term sheet, GTE assented to its terms that no binding settlement agreement would result until a settlement agreement was drafted (A206) and executed, as stated in the term sheet's final paragraph.   (A199); *cf. MetroNet Servs.*, 329 F.3d at 1014 (noting that the agreement required Qwest "to pay the settlement amount 10 days after the date of execution, implying that without execution, Qwest had no obligation to pay"). Further, the parties' notice to the district court that they had "reached agreement" was qualified by the statements that they still needed to "memorialize the term sheet in *further agreements*" and that the "parties *expect* this process to result in a dismissal shortly."   (A164).   But contract formation requires more than an "expectation" that agreement will be reached.  *See Kruse v. Bank of America*, 202 Cal. App. 3d 38, 59 (1988).

To the extent that the term sheet can be viewed as forming a binding agreement, at most it is an agreement to negotiate in good faith.  Parties can agree to bind themselves to negotiate in good faith towards a contemplated agreement, but doing so cannot force agreement as to the subject of negotiation.  *See Copeland,* 96 Cal. App. 4th at 1257.

Here, GTE worked in good faith in the 48 hours (and beyond) following the execution of the term sheet to draft the settlement and purchase order agreements contemplated.  These agreements never materialized because the parties could not agree on essential terms to any settlement, including the scope of the purchase orders that would count to fulfill Western Digital's future purchase order commitment.  GTE thus fulfilled any commitment it may have had under the term sheet.

### B.    The District Court Erred in Concluding that the Term Sheet Contains All Material Terms and that the Material Terms Were Sufficiently Definite

Having incorrectly imposed the burden of proving an unenforceable term sheet on the non-moving party, the district court compounded its error by concluding that: (a) the term sheet contained all material terms, and (b) the material terms were sufficiently definite.  Even if deemed a settlement agreement, the term sheet is unenforceable because there was never a meeting of the minds as

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

to a material and necessary term: the scope of the purchase orders that would fulfill

Western Digital's $ ▮▮▮▮▮▮ purchase order commitment.

### 1. The Scope and Pricing of Future Purchases Was a Material Term

"A settlement agreement is a contract, and the legal principles which apply

to contracts generally apply to settlement contracts."  *Weddington,* 60 Cal. App.

4th at 810.  Notwithstanding any policies favoring settlement, "[t]he fact that the

context was one of settlement negotiation. . . has no analytical impact on the

question of whether an enforceable contract was ever formed."  *Id.* at 808.  Courts

cannot enforce a settlement agreement where none exists; the parties must have

actually agreed to the terms of settlement.  *Callie*, 829 F.2d at 891; *accord*

*Weddington,* 60 Cal. App. 4th at 797 ("If no meeting of the minds has occurred on

the material terms of a contract . . . no contract formation has occurred.").

"A settlement agreement, like any other contract, is unenforceable if the

parties fail to agree on a material term or if a material term is not reasonably

certain."  *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1622 (2006).  Thus,

even if the parties intended for the term sheet to be a binding settlement agreement,

that alone is not enough; "the formation of a settlement contract requires

agreement on its *material terms*."  *Callie,* 829 F.2d  at 891 (emphasis in original).

To determine whether a term is material, courts look to the context and conduct of

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

the parties in the course of their negotiations.  *See Weddington*, 60 Cal. App. 4th at 799-804, 808.

The district court found that "[t]he scope of future purchase orders is . . . a material aspect of any settlement agreement to resolve this dispute."  (A7:1-2). While the parties ostensibly agreed that Western Digital would have a $████ commitment, the parties never agreed upon which purchases would count towards that commitment:  ***GTE believed that the parties had agreed that purchases would be from the 2013 price list, while Western Digital contends it believed that any GTE good or service purchased would count towards its commitment.*** (A301; A321; A347; A597-98, ¶ 4; A308; A336; A404).  The scope of the purchase orders that would count towards the commitment was the subject of much debate, initially presenting a hurdle at the November 15, 2013 negotiations (A597 ¶ 3), and then, later, during the drafting of the term sheet and related purchase order agreement, the parties went back and forth with their edits and redlines on what would or would not be within the scope.  (A287-88; A301; A308; A321; A336; A347; A360).  That identifying the universe of what goods would be purchased would be this significant to the parties is not surprising, given that Western Digital has been one of GTE's largest customers (A6; A182) and that the purchase order commitment would account for $████ of the $████ consideration to GTE.  (A199).

- 35 -

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

GTE's and its President Dr. Guzik's belief that the scope of purchases was limited to the items set forth on the Guzik 2013 Price List was supported by objective evidence, particularly the November 22, 2013 settlement discussions between Dr. Guzik and Mr. Babakanian.  (A597-98 ¶ 4).  In contrast, Western Digital's counsel largely argued that the company believed that the scope was not limited to the GTE items on the Guzik 2013 Price List, yet submitted scant evidence to support this position.  (A193-241; A633-36).  Further, in drafting the settlement agreement, the parties realized that there was no meeting of the minds over the scope of the future purchase orders, further evidencing the materiality of the provision.

### 2.    The District Court's Interpretation and Application of *Facebook* Were Flawed

In particular, the district court misapplied *Facebook Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1037-38 (9th Cir. 2011), in concluding that "which future purchase orders count towards the $███████ commitment," though material to the agreement, were not "*necessary* terms of the settlement agreement[,]" because it "merely . . . affect[s] the total value GTE is to receive from Western Digital throughout their entire business relationship."  (A7:3-5, 8-10) (original emphasis).  Rather, *Facebook* holds that a contract which omits material terms that affect the value of the bargain may still be enforceable, so long as the contract terms that *are* included are "sufficiently definite for a court to

- 36 -

determine whether a breach has occurred, order specific performance, or award damages." *Facebook*, 640 F. 3d at 1038. That does not exist here.

In *Facebook*, the parties executed a settlement agreement under which Facebook would acquire a competitor company's shares and the competitor's principals, the Winklevosses, would receive cash and a certain percentage of Facebook shares. The Winklevosses argued that the agreement was unenforceable, because the terms of the cash and stock acquisition were material and had not been agreed upon by the parties. In affirming the grant of Facebook's motion to enforce settlement, the Ninth Circuit found that the parties explicitly agreed that Facebook alone would fill in the missing material terms: "Facebook *will determine* the form & documentation of the acquisition of [the competitor company's] shares. . . ." *Id.* at 1038 (original emphasis). It concluded that California law allows parties to delegate choices over terms, "so long as the delegation is constrained by the rest of the contract and subject to the implied covenant of good faith and fair dealing." *Id.* (internal citation omitted). Part of the key passage relied upon by the district court, regarding the two ways a term may be material, reads as follows:

> It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain. Obviously, omission of the former would render the contract a nullity. *See Citizens Utils. Co. v. Wheeler,* 156 Cal.App.2d 423, 319 P.2d 763, 769-70 (1958) (arms-length acquisition of a private company's shares couldn't proceed because price was omitted from the contract). But a contract that omits terms of the latter type is enforceable under *California law, so long as the terms it does include are sufficiently*

> *definite for a court to determine whether a breach has occurred, order specific performance or award damages. See Elite Show Servs., Inc. v. Staffpro, Inc.,* 119 Cal.App.4th 263, 14 Cal.Rptr.3d 184, 188 (2004); 1 B.E. Witkin, *Summary of California Law, Contracts* § 137 (10th ed. 2005) []; *cf. Terry v. Conlan,* 131 Cal.App.4th 1445, . . . (2005).

*Facebook*, 640 F.3d at 1037-38 (emphasis added).

Unlike in *Facebook*, the term sheet here did *not* contain a delegation of terms clause that could resolve the missing terms as to which goods or services would count towards the purchase order obligation. Nevertheless, the district court incorrectly analogized the Winklevosses' express delegation to Facebook to fill in the "material" terms of that deal to the instant term sheet's provision that the parties would work in good faith to draft settlement and purchase agreements:

> Also as in *Facebook*, the term sheet here even specifies that the parties would complete the 'material' terms that GTE claims are missing from the deal: 'The parties will work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the above terms' This clause confirms that GTE and Western Digital meant to bind themselves and each other to a deal, 'even if some material aspects of the deal would be prepared later'

(A6 (citing *Facebook*, 640 F.3d at 1037-38)).

But there is a key difference: under *Facebook*'s delegation clause, no further agreement by the parties was required, since the parties already agreed that Facebook could *unilaterally* supply the missing terms. In contrast, the parties here only agreed that they "would work in good faith" to draft the settlement and

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

purchase order agreements, thereby necessitating *further agreement* to any additional material terms to be supplied by these documents.  ***Indeed, the parties did not even agree that settlement and purchase order agreements would be drafted at all, only that they would work in good faith to try to do so***.  In other words, there was no mechanism for supplying the additional material terms without further agreements by the parties, as existed in *Facebook*.

Accordingly, the excerpt from *Facebook* relied upon by the district court is simply a restatement of the unremarkable proposition that material terms must not be missing and must be sufficiently definite for a contract to exist.  The Ninth Circuit applies California contract law; it cannot create it.  *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997).  The California cases upon which the Ninth Circuit relies, *Citizens Utils. Co. v. Wheeler,* 156 Cal. App. 2d 423 (1958),[6] and *Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263 (2004), further confirm that

---

[6] In *Citizens Utilities*, a stock sale memorandum establishing a method for ascertaining the purchase price "was so vaguely expressed" as to be "wholly unascertainable, [such] that [it] failed to impose legally binding obligations upon the parties." 156 Cal. App. 2d at 433.  Fluctuations in the conceivable value of the bargain confirmed that a necessary term was missing. *Id.* at 433-34 (the "magnitude of the risk to the parties" by trying to substitute a reasonable price for the method by which the parties intended to determine price was apparent, where the stock price ranged from $2,300,000 to $7,200,000).  Here, too, the risk to GTE by an attempt to substitute systems outside the 2013 price list for items only set forth on the 2013 price list runs in the millions of dollars: a complete system offered by GTE costs approximately $▮▮▮▮ each (A601), and the term sheet contemplated minimum orders of ▮ systems per year for the ▮▮▮▮▮ (A200).

*Facebook*, when properly applied, compelled the district court to find that what goods the purchase orders would consist of were missing material terms, without which a court could not determine whether a breach had occurred or award damages.[7]    By nonetheless enforcing the "settlement agreement," the district court's decision ran afoul of established precedent.

### 3.    The District Court Erred in Concluding that the Material Terms Regarding the Items to Be Purchased and Their Prices Were Sufficiently Definite

"[A contract] must not only contain all the material terms but also express each in a reasonably definite manner." *Weddington,* 60 Cal. App. 4th at 816.[8]  "To

---

[7] *Elite Show* held that a settlement provision requiring the payment of reasonable attorneys' fees was not indefinite, because statutes governed how to determine the amount.  119 Cal. App. 4th at 269-70.  Thus, "the fact that the offer does not specify a particular amount of attorney fees *does not leave the matter open for the parties' future agreement, nor does it create an uncertainty that renders it unenforceable*."    *Id.* at 269 (internal citations omitted) (emphasis added).    In contrast, here, the scope of the purchase orders is indefinite, and there is no agreed-upon means to resolve the material uncertainty, such as delegation (*Facebook*) or statute (*Elite Show*).

[8] *Weddington* is instructive. There, litigants entered into a term sheet that recited "the significant 'deal points' with respect to all litigation" and stated that "[a]ll parties agree to settle and dismiss on the following terms."    *Id.* at 799.    It also stated: "There are no other significant terms."    *Id.*    But as the parties sought to formalize these deal points in further agreements, material disputes arose, particularly concerning the scope of a critical license.    The Court of Appeal held that the term sheet, despite its recitations, was too indefinite to enforce. *Id.* at 808-09, 816.    *See also Terry v. Conlan*, 131 Cal. App. 4th 1445, 1458-60 (2005) (no enforceable contract where parties agreed to settlement goals but not as to the means of reaching them, where such means were essential and material terms).

be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. California State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993); Cal. Civ. Code § 3390(5) (terms are "not sufficiently certain" to allow specific enforcement where the act to be done is not "clearly ascertainable"). "If, by contrast, a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." *Weddington*, 60 Cal. App. 4th at 811.

In determining whether a term is indefinite, "rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties." *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39-40 (Cal. 1968). The test of admissibility of extrinsic evidence to explain the meaning of a contract "is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Id.* at 37. It is reversible error for a trial court to refuse to consider such extrinsic evidence. *Id.* at 40-41; *accord Southern Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1246 (1999) (same).

The key disputed purchase order scope provision provides:

- 41 -

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE



(A199).

Here, the district court erred in concluding that the provision regarding purchase order scope and pricing is sufficiently definite to determine a breach of the agreement as well as resulting damages. (A8:16-17). That the term sheet recites that the parties "agree to the above terms to resolve all claims pending, or previously pending," begs the question as to whether the terms are sufficiently definite to constitute a binding contract. (A205). In fact, as they tried to convert the term sheet into settlement and purchase order agreements, it became apparent that, just as in *Weddington*, the parties had not actually agreed to the same thing in the same sense. *See* Cal. Civ. Code § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."). Further, the correct test for considering the admissibility of extrinsic evidence is whether the provision is

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

*"reasonably susceptible"* to GTE's interpretation – a lower standard than the Order's conclusion that "there are not two *reasonable* interpretations" of the provision." *Compare Pacific Gas*, 69 Cal. 2d at 40 (emphasis added) *with* A8:19.

The district court erroneously rejected GTE's interpretation of the provision as "not reasonable" because it purportedly contradicted the language of the term sheet on two grounds: (1) ████████████████████████ ██████████████████████, which are not on the Price List, but yet the document explicitly says are included in the scope of purchase orders," and (2) the term sheet authorizes Western Digital ████████████████ ████████████████████████████████████ ██████████████████████████ (A8-9).

First, contrary to the court's conclusion, the 2013 price list reflects that four goods arising from non-recurring engineering (NRE) *are* included: "CCW Cartridge with AE & Preamp"; "CW Cartridge with AE & Preamp"; "CCW Combloader"; and "CW Combloader."  (A601)  At the January 23, 2014 hearing on the motion to enforce, GTE's counsel directed the district court to the 2013 price list, explaining that these four products are specially marked with an asterisk to show that Western Digital would get credit against the purchase order obligation for these four goods arising from NRE, yet that the non-recurring engineering costs associated with customizing these products are *not* included against Western

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

Digital's $███████ purchase order commitment.  (A601, A675:9-21).  Each of these goods requires non-recurring engineering costs; therefore, the listed price which was to count towards the $███████ purchase order commitment excludes the additional NRE costs, as indicated on the 2013 price list by an asterisk (*), denoting "Does not include NRE."  (A601).  The evidence reflecting the exclusion of the NRE cost for the four goods arising from NRE on the 2013 price list is therefore entirely consistent with the term sheet's provision that NRE costs will not count towards Western Digital's purchase order commitment.

Second, the court's distinction that the 2013 price list only includes ████████████████████████████████████████████ as opposed to "goods, software licenses, and components and/or services" which can be ordered at any time, is again belied by the evidence itself, *i.e.,* the 2013 price list.  (A8).  The 2013 price list consists of items that, when ordered together, comprise a system that costs $██████.  (This is indicated at the bottom of the 2013 price list, where it states that the "Total Sales Price Per System" is $██████.  (A601)).  But the goods and services that comprise the "Total … System" are also individually priced and can be purchased separately.  (*Id.*)  For example, the 2013 price list includes "Torque Screw Driver Set" for $████; "HP Computer + Monitor" for $██████; and "GSS Support for Installation" for $████.  (*Id.*)  Thus, the 2013 price list is entirely consistent with the term sheet's provision that entire systems can only be

ordered twice a year, but individual items on the price list can be purchased at ███

████████████ (A200 at "Purchase Order Placement" provision).

The Order also concluded that "any ambiguities in the term sheet generating this dispute involve such relatively small amount [sic] of purchase orders that the scope of purchase orders can still be sufficiently definite without their resolution[,]" reasoning that repairs and maintenance would account for a small portion of the $████████ (A9:5-12). But there is no evidence, let alone substantial evidence, to support such a conclusion. Instead, the district court relied purely on attorney argument. (*See infra* Argument, Sec. III.A; *see also Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 506 (Fed. Cir. 2014) (vacating district court's rulings based on attorney argument and remanding for appropriate evidentiary standards and judicial procedures). Thus, the district court's conclusion that the parties' dispute over the scope of the purchase orders is *de minimis* fails for lack of substantial evidence.

## C.     The District Court's Conclusions Regarding the Purchase Order Scope Provision Cannot Be Reconciled with the Extrinsic Evidence

The Order also fails to address the substantial extrinsic evidence of the parties' negotiations submitted by GTE, which supported GTE's interpretation and cannot be reconciled with the Order's conclusions. (A266-592; A600).

- 45 -

At the time of execution, GTE objectively understood the disputed provision to restrict Western Digital's purchases to products on the 2013 price list and submitted the evidence to back that up. (*See infra* pp. 7-13 and evidence cited therein; A596-601). The undisputed evidence showed that, on November 22, Dr. Guzik and Mr. Babakanian discussed *which products* should be included on the 2013 price list, such as including GTE's less expensive RWA 4000 (4Gbit) system. (A597 ¶ 4; A601). The redlines of the draft agreements that led up to the term sheet's execution were further objective evidence of GTE's intent that the 2013 price list limit the scope of the purchase order provision. (A287-88; A301; A308; A321; A336; A347; A360). On November 29, 2013, GTE rejected Western Digital's redlined edits which would have expanded the scope beyond the 2013 price list. (A347). Western Digital accepted GTE's edits (A360), which then became part of the term sheet. (A199). Thus, viewed objectively, GTE reasonably concluded from the exchange of redlines that the scope of the purchase orders reflected on the term sheet was limited to the 2013 price list. In contrast, Western Digital insisted that the term sheet's reference to the 2013 price list should not limit which of its purchase orders would count towards its purchase order commitment. (A403-05; A433; A461; A444; A460; A499; A555-56).

Had the district court fairly analyzed the evidence before it, it would have found that the disputed provision is reasonably susceptible to GTE's interpretation

that the purchases were to be made exclusively from the 2013 price list and, further, that the parties evidently did not have a meeting of the minds with respect to this term.  In fact, only after the parties worked to craft the term sheet into settlement and purchase order agreements, did it become fully apparent that the provision regarding the scope of purchase orders was sufficiently indefinite that the parties did not have a meeting of the minds.  Thus, like in *Weddington*, the lack of mutuality regarding a material term—the scope of the purchase orders—did not become apparent until the parties started drafting the settlement agreement.  No enforceable "settlement agreement" was ever formed.  The Order, which reflects the district court's erroneous interpretation of the term sheet, shored up by Western Digital's attorney arguments rather than the evidence, should be reversed.

## III. THE DISTRICT COURT'S DETERMINATION THAT THE TERM SHEET WAS AN ENFORCEABLE SETTLEMENT AGREEMENT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

### A. The District Court Impermissibly Relied Upon Attorney Argument

The district court incorrectly concluded that the term sheet is an enforceable settlement agreement, even though such a conclusion was not supported by substantial evidence, by relying instead upon Western Digital's attorney argument.

"Attorney argument is not evidence."  *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 506 (Fed. Cir. 2014).  In *Elcommerce.com*, this Court recently held that where a defendant presented only attorney argument to prove that a patent was

invalid for indefiniteness, the district court had erred in granting summary judgment without a proper evidentiary basis for its conclusion. *Id.* (vacating rulings on the systems claims and remanding for application of appropriate evidentiary standards and judicial procedures, because "[t]he burden was on SAP to prove its case, and in the absence of evidence provided by technical experts . . . there is a failure of proof."); *accord Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1583-84 (Fed. Cir. 1990) (vacating summary judgment of non-infringement and remanding; criticizing "reliance on attorney argument and counsel's unsworn fact statements as 'evidence'").

Here, GTE submitted the declaration of GTE's attorney Mr. Gilliland with twenty-four (24) exhibits, setting forth the contemporaneous history of the parties' negotiations, as well as the declaration of Dr. Guzik, GTE's founder and president, with two exhibits, in support of its opposition to Western Digital's motion to enforce. (A266-595; A596-13). In contrast, other than the declarations of its attorneys, the only evidence Western Digital submitted in support of its own motion was the term sheet (without the critical 2013 price list); copies of the transcripts of the status conferences held on December 2 and 16, 2013; e-mails dated December 6 and 11, 2013 between the two parties' counsel about (and attaching) GTE's nine-point proposal; and a December 13, 2013 e-mail about filing a request for a status conference. (A198-242; A635-6).

During the hearing on the motion, Western Digital's counsel made arguments that had no evidentiary basis or were contradicted by the evidence. GTE objected repeatedly to this "attorney speak" and pointed out that Western Digital had not proffered any evidence.   For example, GTE's counsel Mr. Alberti objected:

> This is a[] . . . settlement that Mr. Guzik carved out eyeball to eyeball with Mr. Babakanian.  Mr. Babakanian whose declaration isn't here.  There's nothing about Mr. Babakanian.   Yet [Western Digital's counsel] Mr. Lumish is standing up and telling you about . . . things that he [Mr. Babakanian] saw and things that he did in the case. ***Mr. Lumish is not allowed to do that.***  Mr. Babakanian can come in with a declaration, real evidence for your Honor, and convey what he finds in dispute with what Mr. Guzik said. [¶]  But the reason he's not here in declaration is because Mr. Guzik told the truth.

(A669:8-18) (emphasis added).

### 1.   Western Digital Submitted Attorney Argument, Not Evidence, Regarding the V-2002 Testers

Nonetheless, the district court relied upon Western Digital's attorney's argument – which is not evidence at all – and quoted such argument in its Order, to support its conclusions.   For example, the district court tried to minimize the ambiguity and uncertainty regarding the disputed scope of purchase orders by relying upon attorney argument that the V-2002 testers on the 2013 price list are "the bulk of what Western Digital will buy and wants to buy from GTE.'":

> GTE argues that this language limits purchase order scope strictly to that which is on the Price List, while Western Digital maintains that the parties also agreed to other purchases outside the Price List.

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

> However, the parties agree the Price List includes the V-2002 testers, which are 'the bulk of what Western Digital will buy and wants to buy' from GTE.

(A8:7-11).  The Order is quoting Western Digital's counsel's argument during the January 23, 2014 hearing on the motion to enforce.  (A645:12-13).[9]  Western Digital's counsel made this argument at other points as well.  *See* A659:22-A660:4 (Western Digital's counsel arguing, "The dispute really comes down to not whether the V-2002s are going to be counted or [sic] the list, which is fairly lengthy. There is no dispute all of that is in.  And so of the ███████ we don't know.  And they've [GTE] offered no evidence to suggest it's anything but the great bulk of what's going to be acquired.  The V-2000 [sic] tester is what we need, what we buy, what the focus is really on in the relationship."));  A625 (unsupported attorney argument in reply brief regarding V-2002 testers; cited 2013 price list merely reflects that V-2002 testers are listed, not Western Digital's plans for future purchase orders of the V-2002s).

The district court's reliance on Western Digital's counsel's bare representations as to what Western Digital would purchase in subsequent years − rather than requiring Western Digital to marshal evidence – is all the more

---

[9] The Order, at footnote 29, inadvertently cites "Docket No. 529" (the December 2, 2013 status conference transcript) for Western Digital's counsel's quoted statement.  The correct citation should be Docket Nos. 551 and 556 (redacted version of Jan. 23, 2014 hearing transcript on Western Digital's motion to enforce).

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

troubling, because Western Digital was the party best-situated (if not the only party) to know what it would purchase in the years ahead. GTE would be hard pressed to produce evidence with respect to Western Digital's future purchasing plans of the V-2002 testers or other products, thus highlighting the district court's error in imposing the burden of proof on GTE and in relying upon Western Digital's attorney argument rather than competent evidence.

### 2. Western Digital Submitted Attorney Argument, Not Evidence, Regarding Non-Recurring Engineering (NRE) Goods

A second area in which the district court improperly relied on Western Digital's attorney argument was with respect to non-recurring engineering goods, in support of its position that the purchase order scope included GTE products beyond those listed on the 2013 price list. The Order states:

> There are not two reasonable interpretations, as GTE suggests. In fact, GTE's argument that purchase orders are limited to only those goods/services on the Price List contradicts language in the document itself. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which are not on the Price List, but yet the document explicitly says are included in the scope of purchase orders.

(A8:19-23).

There was no evidentiary basis for the conclusion that the NRE goods are not on the price list — only Western Digital's counsel's argument, both in its reply brief (A621:17-20) and at the hearing:

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

MR. LUMISH: . . . It says, "█████████████████████████," There's no dispute about what that means here. . . .

MR. LUMISH: . . . And so the agreement is, okay, those fees are excluded.  Again, that's a clear reference to scope.

THE COURT: Even though the goods resulting from those fees or the work done by those fees are in.

MR. LUMISH: And it says any resulting orders for goods arising therefrom are included.  It doesn't say any that fall within the Guzik 2013 price list.  And of course it doesn't say that because that would make no sense. *A product that comes from an NRE special development custom build isn't going to be on the price list.* . . .

(A656:14-16; A657:13-22) (emphasis added).

In fact, the **evidence** before the district court showed that the NRE products **were** on the 2013 Guzik Price List.  (A601) (identifying four products, by an asterisk, as having NRE fees associated with them: CCW Cartridge with AE & Preamp, CW Cartridge with AE & Preamp, CCW Combloader, and CW Combloader).  Guzik's counsel explained this evidence to the district court.  (A675:9-21).  In contrast, Western Digital submitted no evidence to support its counsel's argument.

### 3.    Western Digital Submitted Attorney Argument, Not Evidence, Regarding Repairs and Maintenance

On the issue of whether the material terms are indefinite, the Order reflects Western Digital's argument that the material, indefinite terms involved relatively small amounts of purchase orders:

Furthermore, any ambiguities in the term sheet generating this dispute involve such relatively small amount of purchase orders that the scope of purchase orders can still be sufficiently definite without their

CONFIDENTIAL MATERIAL REDACTED FROM THIS PAGE

resolution.  Looking at the disagreement in the context of the entire agreement, and *because repairs and maintenance will account for such a small portion of the $*██████*, this disagreement is immaterial.*  Therefore, the term sheet is sufficiently definite to determine which of Western Digital's future purchase orders could be credited against its $██████ commitment and to determine any breach. . . .

(A9:5-12) (emphasis added).

The court cited only the term sheet as evidentiary support.  But the term sheet does not reflect that repairs and maintenance will account for a small portion of the purchase order commitment.  And, Western Digital offered no declaration attesting to such facts.  Rather, the district court appears to be adopting Western Digital's counsel's argument.  *See* A660:12-20 (counsel arguing that whether Western Digital gets to count a purchase order for a repair is not material in the context of the total purchase order commitment); *see also* A625:6-8 (Western Digital's reply brief) ("The vast majority of any payment Western Digital will make to [GTE] in the next ██ years will be for new testers and related equipment on the price list.").

Even Western Digital's counsel apparently recognized that no competent evidence supported his conclusory arguments.  So, he belatedly offered to provide the district court with some evidence – Mr. Babakanian's declaration.  Counsel also offered personal assurances that the evidence that Western Digital did not submit (such as the 2013 price list) would have supported its position:

- 53 -

On the Babakanian declaration, we heard about that a number of times. And there is no Babakanian declaration here because what he has to say subjectively about what the party said is hearsay, and it's irrelevant. . . .

Having said that, if your Honor thinks it's important, if you think it's material, I will make an offer of proof to you right now that Mr. Babakanian would submit a declaration . . . .

. . . I feel very comfortable representing to your Honor that it would say that, in fact, Mr. Babakanian's understanding was, if we bought it, it went into the future purchase order's allocation. And that was always his understanding, and that was always Western Digital's position. . . .

Now, I'd like to turn to the price list point. There was two or three times where it was stated that we conveniently left out the price list. We didn't put it in. Again, I want to represent to your Honor, there was no ill intent in not submitting the price list. I think the price list overwhelmingly supports our position. . . .

(A693:24-694:2; A694:4-14; A694:21-695:1).

Despite this offer by counsel, neither the district court nor Western Digital remedied Western Digital's lack of evidence. Instead, the Order cited to or described Western Digital's counsel's argument, both from the hearing transcript and its reply brief, to fill in the evidentiary gaps. This was plainly legal error. *Weddington*, 60 Cal. App. 4th at 817-18 (court cannot fill in missing material terms). The district court's decision that the term sheet was an enforceable settlement agreement was impermissibly supported by attorney argument, rather than by substantial evidence. The Order should be reversed and remanded for a trial on the merits.

### B.    Alternatively, this Court Should Reverse the Order and Remand for an Evidentiary Hearing

In *In re City Equities Anaheim*, 22 F.3d 954, 957 (9th Cir. 1994), the Ninth Circuit discussed the benefits of summary enforcement of a settlement agreement, but also cautioned about its limits:

> Summary enforcement 'is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve.' Accordingly, we have found enforcement upon motion inappropriate where material facts concerning the existence or terms of a settlement were in dispute . . . .

*Id.* at 957 (internal citations omitted). "[A] court has no discretion to enforce a settlement where material facts are in dispute; an evidentiary hearing must be held to resolve such issues." *Id.* at 958 (citing *Callie*, 829 F.2d at 890).

GTE submits that there was no agreement formed, because there was no meeting of the minds as to the purchase order scope provision. Thus, the district court could have, and should have, denied Western Digital's motion to enforce summarily, based upon legal interpretation of the purported agreement and the dearth of evidence produced by the moving party. This is the relief GTE seeks from this Court. However, to the extent that the district court erred in not holding an evidentiary hearing to resolve Western Digital's motion to enforce settlement and this Court finds that an evidentiary hearing is necessary, GTE respectfully

requests, in the alternative, that this Court reverse the district court's Order and remand for an evidentiary hearing.

## CONCLUSION

For the above reasons, GTE respectfully requests that the Court reverse the district court's Order granting Western Digital's motion to enforce settlement agreement and hold that, as a matter of law, no enforceable settlement agreement exists, and remand for a trial on the merits. Alternatively, GTE respectfully requests that the Court reverse the district court's order granting Western Digital's motion to enforce settlement agreement and remand for an evidentiary hearing on the purported settlement agreement.

July 7, 2014                                    Respectfully submitted,

                                    */s/ A. Marisa Chun*
                                    Daniel E. Alberti
                                    A. Marisa Chun
                                    Eric W. Hagen
                                    McDERMOTT WILL & EMERY LLP
                                    275 Middlefield Road, Suite 100
                                    Menlo Park, CA 94025-4004
                                    650.815.7400

                                    *Attorneys for Plaintiff-Appellant*
                                    *Guzik Technical Enterprises, Inc.*

# Addendum

1

2

3

4

5

6

7

8

9

10

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GUZIK TECHNICAL ENTERPRISES, INC., | ) | Case No. 5:11-cv-03786-PSG |
| Plaintiff and Counterclaim Defendant, | ) | **ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT** |
| v. | ) | |
| WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES. INC., and WESTERN DIGITAL (FREMONT), INC., | ) | **(Re: Docket Nos. 531-4)** |
| Defendants and Counterclaim Plaintiffs, | ) | |
| and | ) | |
| WESTERN DIGITAL (THAILAND) COMPANY LIMITED AND WESTERN DIGITAL (MALAYSIA) SDN. BHD., | ) | |
| Defendants. | ) | |

The settlement of any case rarely comes without mixed feelings.  It is a time when parties

struggle to let go of their deep-seated belief that with trial will come vindication.  It is also a time

when the plaintiff and defendant wonder if they are about to be snookered, either by giving too

much or taking too little.  Patent cases are no different.  For both the patentee and the accused

1

1  infringer, the question ultimately is the same, what will I regret more, settling this case-- or not

2  settling it?

3       Sometimes such buyer's remorse causes one party or the other to try to "unsettle" the case,

4  or "resettle" it on different terms.  That appears to be the case here.  Having made multiple

5  representations to the court that the case was settled, Plaintiff Guzik Technical Enterprises, Inc.

6  now claims that no settlement took place at all.  In response, Defendants and Counterclaimants

7  Plaintiffs Western Digital Corporation et al. move to enforce the settlement.  As explained below,

8  because the necessary terms were agreed upon without qualification and sufficiently definite, the

9  court GRANTS Western Digital's motion

10

### I. BACKGROUND

11       GTE sells high-end testers for disk drive heads and media, and for years Western Digital

12  has been one of its largest customers.[1]  GTE filed this suit against Western Digital in 2011, alleging

13  patent infringement, breach of contract, and trade secret misappropriation.[2]  After over two years of

14  litigation and just a few days before trial, the parties signed an eight-page term sheet entitled

15  "Agreed Terms" so as "to resolve all claims pending, or previously pending, in the lawsuit."[3]  In

16  exchange for a dismissal of all GTE claims, Western Digital agreed to an upfront payment of ▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The term sheet also set out scope and pricing of

18  the purchase orders, purchase order placement, provision for termination of the agreement,

_____

[1] *See* Docket No. 1 at 4; Docket No. 531-4 at 1.

[2] *See* Docket No. 1.

[3] *See* Docket No. 533, Exhibit A at 7.  The term sheet was the result of negotiations launched
several months before.  *See* Docket No. 533-1 at ¶¶ 2, 4-7.

2

covenants not to sue, and so forth.[4]  The parties anticipated that the term sheet would be incorporated into a complete settlement agreement within 48 hours after its signing.[5]

On November 30, 2013, the parties filed a "Joint Notice of Settlement," representing that the parties had "reached an agreement in a signed term sheet."[6]  The parties continued to "work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the terms set out in the term sheet.[7]  On December 2, 2013, as trial was set to start, the parties appeared before the court with news that they "reached an agreement with respect to the main terms and are just really hammering out the details at this point."[8]  Based on this representation, the court sent the jury home and noted on the docket that the "case has settled."[9]  In the following days, negotiations between the parties to further memorialize the settlement deteriorated.  Things then fell apart completely. GTE insisted that, instead of the term sheet, all further settlement negotiations revolve around a nine-point list.[10]  Western Digital rejected the demand and followed with this motion to enforce settlement.

---

[4] *See* Docket No. 533, Exhibit A.

[5] *See* Docket No. 533, Exhibit A at 8.

[6] Docket No. 474.

[7] *See* Docket No. 474 at ¶ 18.

[8] Docket No. 529 at 4:8-10.

[9] Docket No. 475.

[10] *See* Docket No. 531-6, Exhibit C.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

## II. ANALYSIS

There is no question that "[t]he district court [has] inherent power to enforce the agreement in settlement of litigation before it."[11] "Whether a contract is certain enough to be enforced is a question of law. Courts favor enforcing contracts if the parties' intention can be ascertained."[12]

"A settlement agreement is binding on the parties, and a party challenging the validity of a settlement agreement carries a heavy burden."[13] Because the signed term sheet purports "to resolve all claims pending, or previously pending, in the lawsuit,"[14] GTE has the burden to prove that the term sheet is unenforceable.[15]

The construction and enforcement of settlement agreements are governed by principles of local law that apply to the interpretation of contracts, even if the underlying cause of action is federal.[16] Under California law, a signed document is a valid agreement if it contains all material terms in a reasonably definite manner.[17] If a material term is missing or not sufficiently definite, the agreement is unenforceable. Further, if a missing term is material but merely affects the *value*

---

[11] *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

[12] *David B. Newman CPA, Inc. v. Jerome Leventhal Accountancy Corp.*, No. B237166, 2013 Cal. App. Unpub. LEXIS 6441, at *9 (Sept. 11, 2013) (citing *Patel v. Liebermensch*, 45 Cal. 4th 344, 348, n.1 (2008); *Copeland v. Baskin Robbins U.S.A*, 96 Cal. App. 4th 1251, 1255-56 (2002)).

[13] *Taylor v. Dep't of Interior*, 34 F. App'x 766, 767 (Fed. Cir. 2002) (citing *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1468 (Fed. Cir. 1998)); *accord Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.").

[14] Docket No. 533, Exhibit A at 7.

[15] *See Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.").

[16] *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992).

[17] *See* Cal. Civ. Code § 3390 ("An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable" cannot be specifically enforced.); *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 816 (1998) (citations omitted) (holding that an agreement "must not only contain all the material terms but also express each in a reasonably definite manner.").

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

of the bargain, the court may still find the settlement agreement enforceable, considering the language of the document, the intent of the parties, whether the parties have delegated choices over material terms, and public policy favoring the enforcement of settlement agreements.[18]

### A.    The Term Sheet Contains All the Material Terms

Whether any material terms are missing from the contract "depends on the agreement and its context and also on the subsequent conduct of the parties."[19] The court may take into consideration the record of the parties' negotiations, the financial impact on the parties, the relative importance of the term to the parties, and whether the term's absence would make enforcing the remainder of the contract unfair to either party.[20] Furthermore, the Ninth Circuit draws a distinction between the two ways a term may be material:

> It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain. Obviously, omission of the former would render the contract a nullity. But a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages. This is not a very demanding test.[21]

---

[18] *See Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1037-38 (9th Cir. 2011).

[19] *Lamle v. Mattel, Inc.*, 394 F.3d 1355 (2005) (citing *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 206 (1984), *overruled on other grounds by Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85 (1995)).

[20] *See Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) (citing *Weddington Productions*, 60 Cal. App. 4th at 808) (One measure of whether terms are material is "whether they have been the subject of debate and discussion during the course of the parties' negotiations".); *Terry v. Conlan*, 131 Cal. App. 4th 1445, 1458-59 (2005) (looking to the discussions on the record to determine the material terms of the agreement and finding that "the means to achieving the goals were material to the settlement, because they had a significant financial impact on the parties."); *City of Los Angeles v. Superior Court*, 51 Cal. 2d 423, 433 (1959) ("The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement.").

[21] *Facebook, Inc.*, 640 F.3d at 1037-38 (citing *Elite Show Servs., inc. v. Staffpro, Inc.*, 119 Cal.App.4th 263 (2004)).

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

Like the settlement agreement in *Facebook*, the term sheet easily passes this test: both sides agreed that Western Digital would get a variety of testers and services, GTE would get a total of ██████ ████, and everyone would return to a productive commercial relationship rather than this destructive litigation.

Also as in *Facebook*, the term sheet here even specifies that the parties would complete the "material" terms that GTE claims are missing from the deal: "The parties will work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the above terms." This clause confirms that GTE and Western Digital meant to bind themselves and each other to a deal, "even if some material aspects of the deal would be prepared later."[22]

What GTE and Western Digital disagree about is the scope of the future purchase orders contemplated in the term sheet and GTE argues this scope is material to the settlement.[23] The bulk of GTE's consideration for signing the term sheet is Western Digital's commitment to issue ███ ███ in future purchase orders. The means of achieving this consideration is undoubtedly important because it dictates the future of the parties' business relationship.[24] It also has a large financial impact on both of the parties, especially since Western Digital is one of GTE's largest customers.[25] In drafting the complete settlement agreement, the details of these purchase orders were the subject of much debate between the parties, indicating their importance to the parties.

---

[22] *Id.* (citing *Sterling v. Taylor*, 40 Cal.4th 757 (2007); *Cal. Lettuce Growers, Inc. v. Union Sugar Co.*, 45 Cal.2d 474 (1955)); *see also Blix Street Records, Inc. v. Cassidy*, 191 Cal.App.4th 39, 48 (2010) ("when parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement.").

[23] *See* Docket No. 528-4 at 13.

[24] *See Terry v Conlan*, 131 Cal. App. 4th at 1459 ("The means to achieving the goals were material to the settlement, because they had a significant financial impact on the parties.").

[25] *See* Docket No. 531-4 at 1.

6

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

1   The scope of future purchase orders is therefore a material aspect of any settlement agreement to

2   resolve this dispute.

3       However, the details of which future purchase orders count towards the ████████

4   commitment are not *necessary* terms of the settlement agreement; a contract can still exist without

5   them. It is well-established that the existence of consideration is necessary for a valid contract,[26]

6   and the parties here have agreed on a firm amount of consideration. Instead, the dispute centers

7   around the means of achieving this consideration. Although these means are material to the

8   agreement, they are merely terms that affect the total value GTE is to receive from Western Digital

9   throughout their entire business relationship. Thus, the term sheet is an enforceable settlement

10   agreement as long as the scope of purchase orders is sufficiently definite for a court to determine

11   
12   whether a breach has occurred, order specific performance or award damages.

13   **B.    The Material Terms Are Sufficiently Definite**

14       "The defense of uncertainty is disfavored, and the court should enforce an agreement if it

15   appears the parties intended to enter into a contract and the outlines of the agreement are

16   sufficiently definite that the court knows what is to be enforced."[27]

17       GTE urges the section in the term sheet defining "Purchase order scope and pricing" is too

18   
19   indefinite to be enforced. The provision reads as follows:

20   
21   ███████████████████████████████████████████████████

22   

23   [26] Cal. Civ. Code § 1550 (providing that it is essential to the existence of a contract that there
should be a "sufficient cause or consideration."); *Gallagher v. Holt*, 436 F. App'x 754, 755 (9th
Cir. 2011) (citations omitted) ("It is well established in California that, to maintain an action at law
24   for breach of contract, one need only prove the existence of consideration, rather than its
adequacy."); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001) (citation omitted) ("An essential
25   element of any contract is the consent of the parties, or mutual assent.").

26   [27] *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002) *aff'd*,
27   64 F. App'x 241 (Fed. Cir. 2003) (citing Okun, 203 Cal. App. 3d at 817); *see also Rosenbluth v.
Prudential Sec., Inc.*, 134 F. App'x 124, 125 (9th Cir. 2005) (citations omitted) ("The parties'
28   intentions are determinative of the question of contract formation.").

7

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT



[28]

GTE argues that this language limits purchase order scope strictly to that which is on the Price List, while Western Digital maintains that the parties also agreed to other purchases that fall outside the Price List. However, the parties agree the Price List includes the V-2002 testers, which are "the bulk of what Western Digital will buy and wants to buy" from GTE.[29] The Price List includes products that are part of a complete system, but does not say anything about the other products or services Western Digital may purchase. The disagreement thus centers around whether included in the scope are orders for products or services not on the Price List, including repairs and maintenance,[30] and products GTE makes for other customers.[31]

The term sheet is sufficiently definite to determine both a breach of the agreement as well as damages arising therefrom. A jury could discern whether a future Western Digital purchase order would count toward the committed ▉▉▉. There are not two reasonable interpretations, as GTE suggests. In fact, GTE's argument that purchase orders are limited to only those goods/services on the Price List contradicts language in the document itself. For example, ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, which are not on the Price List, but yet the document explicitly says are included in the scope of purchase orders.

[28] Docket No. 533, Exhibit A.

[29] Docket No. 529.

[30] *See* Docket No. 538-5 at 2.

[31] *See id.*; Docket No. 538-4 at 8.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

1    Additionally, Western Digital is authorized in the agreement ████████████████

2    ████████████████████████████████████████████████████████

3    ██████████████████████████[32] The term sheet thus acknowledges that

4    products/services may be ordered other than just those on the Price List.

5        Furthermore, any ambiguities in the term sheet generating this dispute involve such

6    relatively small amount of purchase orders that the scope of purchase orders can still be sufficiently

7    definite without their resolution. Looking at the disagreement in the context of the entire

8    agreement, and because repairs and maintenance will account for such a small portion of the ████

9    ████, this disagreement is immaterial.[33] Therefore, the term sheet is sufficiently definite to

10   determine which of Western Digital's future purchase orders could be credited against its ████

11   ████ commitment and to determine any breach of an obligation arising therefrom.

12       A jury also could easily determine damages arising from any future dispute over the term

13   sheet. Western Digital is required to pay ████████████████████ in purchases

14   over ██████ (unless the agreement is subsequently terminated). Therefore, GTE can expect to

15   receive a total of ██████ so long as it tenders appropriate purchase orders. If it does not then

16   receive these payments, damages can easily be calculated.

17       The parties certainly gave the court the impression that they intended to settle their dispute.

18   The best place to look for party intent is the document itself, where the parties explicitly agreed

19   that they intended the term sheet to end this litigation.[34] The document was signed by senior

20   executives of both companies, including GTE's President and Western Digital's General Counsel.

---

[32] Docket No. 533, Exhibit A at 2.

[33] *Cf. Terry v. Conlan*, 131 Cal. App. 4th 1445, 1455 (2005) (holding that a settlement agreement was not enforceable in a dispute regarding disposition of trust assets where terms left in dispute included management of the estate, status and category of the trust, payment of attorney fees, compensation for services previously rendered, and others).

[34] *See* Docket No. 533, Exhibit A at 2 ("The parties 'hereby agree to the above terms to resolve all claims pending, or previously pending, in the lawsuit.'").

9

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

They then filed a "Joint Notice of Settlement" representing to the court that the parties "reached an agreement in a signed term sheet" and requested for the trial to be taken off calendar.[35]  A couple days later, the parties appeared in court saying they "had reached an agreement with respect to the main terms and are just really hammering out the details at this point."[36]  The court's docket confirms its understanding that the case had settled.[37]

The Ninth Circuit has an expansive view of what it means to settle a case and California has a strong policy in favor of enforcing settlement agreements.[38]  "California law permits parties to bind themselves to a contract, even when they anticipate that 'some material aspects of the deal [will] be papered later.'"[39]  The fact that the parties were to later draft other agreements "reasonably necessary to effect" the terms of the term sheet, does not make any less binding those terms that *are* agreed to in the signed term sheet.[40]  Even if the parties still had to work out the details of purchase order scope, those details were not so essential as to invalidate the main terms that the parties did work out.[41]  The court sees little reason to incentivize parties to back out of a

---

[35] Docket No. 474.

[36] Docket No. 529.

[37] *See* Docket No. 475.

[38] *See Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007) ("Strong public policy in favor of the settlement of civil cases gives the trial court, which approves the settlement, the power to enforce it.").

[39] *Larson v. Warner Bros. Entm't, Inc.*, 504 F. App'x 586, 587-88 (9th Cir. 2013) (citing *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011); *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299 (1999)).

[40] *See* Docket No. 533, Exhibit A.

[41] *See Mann v. Mueller*, 140 Cal. App 2d 481, 487 (1956) ("Where the parties, as in the instant action, have agreed in writing upon the essential terms of their contract, even though several more formal instruments are to be prepared and signed later, the written agreement which they have already signed is a binding contract."); *Facebook, Inc.*, 640 F.3d at 1038 (finding the parties "meant to bind themselves and each other, even though everyone understood that some material aspects of the deal would be papered later").

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

deal to which they clearly intended to be bound.[42]   At the time of signing, both GTE and Western

Digital intended to enter into an agreement and intended it to end all litigation.  GTE simply has

not met its burden to show that the term sheet is so indefinite as to render it an unenforceable

settlement agreement.

### C.     The Termination Clause Does Not Render the Agreement Unenforceable

GTE separately argues the termination clause renders the term sheet an illusory promise

and thus unenforceable.[43]   This provision essentially permits Western Digital to terminate the entire

agreement if GTE sues for breach of contract.  Thus, a dispute about a small amount of money

could provide the hook from which Western Digital could avoid issuing purchase orders totaling

▮▮▮▮▮.  However, there is a difference between a bad deal and an unenforceable one.  GTE

may have entered into a bad deal because such an immaterial portion of the consideration can be

the grounds for termination of the entire settlement agreement.  However, that does not alter the

conclusion that the parties intended to end their dispute with the term sheet and its material terms

are sufficiently definite to do just that.  Western Digital is still required to pay ▮▮▮▮▮

▮▮▮▮▮, which, by itself, is adequate consideration.  Furthermore, GTE has control over

the condition precedents for any Western Digital termination action.  The agreement, therefore, is

not illusory.  This termination provision was agreed to by both parties and does not render the

agreement unenforceable.[44]

---

[42] *See Facebook*, 640 F.3d. at 1034 ("There are also very important policies that favor giving effect
to agreements that put an end to the expensive and disruptive process of litigation . . . [T]here is an
overriding public interest in settling and quieting litigation.").

[43] *See* Docket No. 538-4 at 14-15.

[44] Western Digital separately argues that GTE should be judicially estopped from arguing there is
no enforceable settlement agreement because it has taken two inconsistent positions – that the case
had settled and then later that it had not.   Judicial estoppel applies when "(1) the same party has
taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative
proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the
position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first
position was not taken as a result of ignorance, fraud, or mistake." *Blix Street Records*, 191
Cal.App.4th at 47.  However, the court is not persuaded that judicial estoppel should apply here

11

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

### III. CONCLUSION

GTE has not met its burden to show that the term sheet agreement does not contain all the material terms to settle this case or that the material terms are not sufficiently definite. "At some point, litigation must come to an end. That point has now been reached."[45]

**IT IS SO ORDERED.**

Dated: March 21, 2014

PAUL S. GREWAL
United States Magistrate Judge

---

because GTE was not completely successful in asserting the position that the case had settled. Although the court did send home the jury relying on both parties' representations, the case was not yet dismissed and it was understood that ancillary issues might remain. These facts do not rise to the level of egregious circumstances this doctrine is intended to prevent.

[45] *Facebook, Inc.*, 640 F.3d at 1042.

12

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                     NORTHERN DISTRICT OF CALIFORNIA
10                            SAN JOSE DIVISION
11

12   GUZIK TECHNICAL ENTERPRISES, INC.          CASE NO. 5:11-CV-03786-PSG

13          Plaintiff and Counterclaim Defendant,
                                                 [PROPOSED] JUDGMENT
14        v.                                     DISMISSING ALL CLAIMS AND
                                                 COUNTERCLAIMS
15   WESTERN DIGITAL CORPORATION,
     WESTERN DIGITAL TECHNOLOGIES, INC.,         Magistrate Judge: Hon. Paul Singh Grewal
16   and WESTERN DIGITAL (FREMONT) INC.,         Courtroom: 5, 4th Floor

17          Defendants and Counterclaim Plaintiffs, and

18   WESTERN DIGITAL (THAILAND) COMPANY
     LIMITED and WESTERN DIGITAL
19   (MALAYSIA) SDN.BHD,

20          Defendants.
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

[PROPOSED] JUDGMENT DISMISSING ALL
CLAIMS AND COUNTERCLAIMS
5:11-CV-03786-PSG

A000710

1      In accordance with Federal Rule of Civil Procedure 58(a), IT IS HEREBY ORDERED

2  that all claims and counterclaims in this action be dismissed with prejudice pursuant to the

3  Court's Order Granting Motion to Enforce Settlement, dated March 21, 2014 ("March 21

4  Order").

5      Guzik Technical Enterprises, Inc., reserves its right to appeal the Court's March 21

6  Order, as well as this Judgment.

7      The hearing on Western Digital's Motion to Dismiss Action With Prejudice, set for

8  June 10, 2014, shall be removed from the calendar.

9      Each party shall bear its own costs and fees in connection with the Motion to Dismiss

10  Action with Prejudice, the Opposition thereto, and the Stipulation Requesting Judgment

11  Dismissing All Claims and Counterclaims.

12      IT IS SO ORDERED.

13

14  DATED:  May 19, 2014

15                     THE HONORABLE PAUL SINGH GREWAL

16                     UNITED STATES MAGISTRATE JUDGE

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

[PROPOSED] JUDGMENT DISMISSING ALL
CLAIMS AND COUNTERCLAIMS
5:11-CV-03786-PSG

A000711

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused to be electronically filed the **Corrected Non-Confidential Brief of Plaintiff-Appellants Guzik Technical Enterprises, Inc.** with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on July 7, 2014 and thus caused to be served on all registered counsel of record a copy of the same via the CM/ECF system.

/s/ A. Marisa Chun
Daniel E. Alberti
A. Marisa Chun
Eric W. Hagen
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025-4004
650.815.7400

*Attorneys for Plaintiff-Appellant*
*GUZIK TECHNICAL ENTERPRISES*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**No. 2014-1421**

GUZIK TECHNICAL ENTERPRISES, INC. v. WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL (FREEMONT), INC., WESTERN DIGITAL (THAILAND) COMPANY LTD., WESTERN DIGITAL (MALAYSIA) SDN.BHD

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements**

This brief compiles with the type-volume limitation of FED R. APP. P. 32(a)(7)(B) because:

    This brief contains 13,774 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(A)(7)(B)(iii).

This brief compiles with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated: July 7, 2014

                    _/s/ A. Marisa Chun_____
                    A. Marisa Chun
                    McDERMOTT WILL & EMERY
                      LLP
                    275 Middlefield Road, Suite 100
                    Menlo Park, CA 94025-4004
                    650.815.7400
                    mchun@mwe.com