NON-CONFIDENTIAL

**2014-1421**

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
———————————————————

**GUZIK TECHNICAL ENTERPRISES,**

*Plaintiff-Appellant,*

**v.**

**WESTERN DIGITAL CORPORATION, WESTERN DIGITAL
TECHNOLOGIES, INC., WESTERN DIGITAL (FREMONT), INC.,
WESTERN DIGITAL (THAILAND) COMPANY LTD., AND WESTERN
DIGITAL (MALAYSIA) SDN.BHD.**

*Defendants-Appellees.*

———————————————————

Appeal from the United States District Court for the Northern District of
California in Case No. 5:11-cv-03786-PSG, Judge Paul S. Grewal
———————————————————

**BRIEF OF DEFENDANTS-APPELLEES
WESTERN DIGITAL CORPORATION, ET AL.**
———————————————————

Douglas E. Lumish
Richard G. Frenkel
Michelle P. Woodhouse
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025-1008
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

James L. Day
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile:  (415) 395-8095


*Counsel for Defendants-Appellees*

# CERTIFICATE OF INTEREST

Counsel for Appellee Western Digital Corporation certifies the following:

1.    The full name of every party represented by the undersigned counsel in this case is:  Western Digital Corporation; Western Digital Technologies, Inc.; Western Digital (Fremont), Inc.; Western Digital (Thailand) Company Ltd.; and Western Digital (Malaysia) Sdn.Bhd.

2.    The name of the real parties in interest represented by the undersigned counsel is:  N/A (parties in caption are real parties in interest).

3.    Western Digital Corporation ("WDC") has no parent corporation and no publically held company owns 10% or more of its stock.  Western Digital Technologies ("WDT") is a wholly owned subsidiary of WDC.  Western Digital (Fremont), Inc. is a wholly owned subsidiary of WDT.  Western Digital (Thailand) and Western Digital (Malaysia) are both wholly owned subsidiaries of Western Digital Ireland Ltd.

4.    The names of the law firms and the partners and associates that have appeared for Western Digital Corporation et al. in the trial court or are expected to appear for Western Digital Corporation et al. in this Court are:  Douglas E. Lumish, Richard G. Frenkel, Michelle P. Woodhouse, Katherine M. Schon, Michelle R. Ma of Latham & Watkins LLP, Menlo Park, California; Steven M. Bauer, James L. Day, Gavin Masuda of Latham & Watkins LLP, San Francisco, California; Mariam Missaghi, Mohith R. Julapalli, Svetlana M. Berman formerly of Latham & Watkins LLP, San Francisco; and Reynaldo C. Barcelo and Joshua C. Harrison of Barcelo, Harrison & Walker LLP, Newport Beach, California.

Dated: August 14, 2014                    Respectfully Submitted,

                                          */s/ Douglas E. Lumish*
                                          Douglas E. Lumish
                                          LATHAM & WATKINS LLP
                                          140 Scott Drive
                                          Menlo Park, CA 94025-1008
                                          Telephone: (650) 328-4600
                                          Facsimile: (650) 463-2600

                                          *Counsel* for *Defendants- Appellees*
                                          *Western Digital Corporation et al.*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .................................................................i

TABLE OF CONTENTS......................................................................... ii

TABLE OF ABBREVIATIONS AND CONVENTIONS ................................... viii

STATEMENT OF RELATED CASES ....................................................ix

STATEMENT OF THE ISSUES...........................................................1

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE................................................................3

    A.    The Lawsuit Between Guzik and Western Digital.................................3

    B.    The Parties Negotiated and Entered a Settlement Agreement ..............4

    C.    Guzik Repeatedly Confirmed the Parties' Settlement .........................7

    D.    Guzik Hired New Counsel and Attempted to Renegotiate the Agreement ........................................................................................10

    E.    The Court Granted Western Digital's Motion to Enforce the Agreement ........................................................................................12

SUMMARY OF THE ARGUMENT ......................................................14

ARGUMENT ...................................................................................18

    I.    STANDARD OF REVIEW ............................................................18

    II.    GUZIK'S BURDEN OF PROOF ARGUMENT SHOULD BE REJECTED ......................................................................................19

    A.    The District Court Did Not Misassign the Burden of Proof ..............19

    B.    Even Had the District Court Erred in Stating the Burden of Proof, This Court Should Affirm the Judgment Anyway ..................23

III.    THE DISTRICT COURT'S JUDGMENT THAT THE
        PARTIES EXECUTED A BINDING SETTLEMENT
        AGREEMENT SHOULD BE AFFIRMED........................................24

A.    The Executed Agreement Includes All Material Terms and
      Definitively Establishes the Parties' Agreement to Settle .................25

B.    Guzik's Repeated Confirmations of the Settlement Confirm the
      Parties' Agreement ..............................................................................29

C.    The Expectation That Ancillary Agreements Would Be Drafted
      Does Not Render the Agreement Unenforceable................................31

D.    The Agreement Is Sufficiently Definite .............................................36

      1.    The Scope of Purchases That Apply to the Purchase
            Order Commitment Is Clear and Definite................................37

      2.    Even If It Were Ambiguous, the Purchase Order Term
            Goes to the Agreement's Value and Cannot Render the
            Agreement Unenforceable ......................................................43

E.    Guzik's Complaints That the District Court Did Not Consider
      Its Evidence Are Unfounded ..............................................................47

IV.    GUZIK NEVER REQUESTED AN EVIDENTIARY
       HEARING, AND THERE IS NO NEED FOR ONE NOW ..............52

CONCLUSION ..................................................................................................54

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 5, 6, 26-28, 35, 37, 38, 39, 40, 45, 47, 50 and

52 relates to confidential business information set forth in the parties signed term

sheet (A199-207) that was sealed by the district court. The material omitted on

page 11, 42, and 43, relates to confidential business information set forth in the

other writings related to the parties settlement (A605) that was sealed by the

district court.

# TABLE OF AUTHORITIES

## CASES

*Ahern v. Cent. Pac. Freight Lines,*
  846 F.2d 47 (9th Cir. 1988)........................................................... 41, 42

*Bay Area Typographical Union, Union No. 21 v. Alameda Newspapers, Inc.,*
  900 F.2d 197 (9th Cir. 1990)...............................................................18

*Beck v. American Health Group International, Inc.,*
  211 Cal. App. 3d 1555 (1989)........................................................ 33, 34

*Blix Street Records, Inc. v. Cassidy,*
  191 Cal. App. 4th 39 (2010) ......................................................... 29, 31

*Callen v. Pennsylvania R. Co.,*
  332 U.S. 625 (1948) ..................................................................... 19, 21

*Citizens Utilities Co. v. Wheeler,*
  156 Cal. App. 2d 423 (1957)......................................................... 46, 47

*City of Fresno v. People ex rel. Fresno Firefighters, IAFF Local 753,*
  71 Cal. App. 4th 82 (1999) .................................................................37

*Cleo Inc. v. United States,*
  501 F.3d 1291(Fed. Cir. 2007)...........................................................48

*Cohn v. Bugas,*
  42 Cal. App. 3d 381 (1974)...............................................................20

*Core-Vent Corp. v. Implant Innovations, Inc.,*
  53 F.3d 1252 (Fed. Cir. 1995)............................................................24

*Doi v. Halekulani Corp.,*
  276 F.3d 1131 (9th Cir. 2002)............................................................18

*Elcommerce.com, Inc. v. SAP AG,*
  745 F.3d 490 (Fed. Cir. 2014)............................................................50

*Elcommerce.com, Inc. v. SAP AG,* No. 2011-1369,
  2014 U.S. App. LEXIS 11068 (Fed. Cir. June 6, 2014) .......................51

*Estate of Thottam*,
   165 Cal. App. 4th 1331 (2008) ..................................................... 23, 28

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
   640 F.3d 1034 (9th Cir. 2011)...................................................... *passim*

*Founding Members of Newport Beach Country Club v. Newport Beach Country*
   *Club, Inc.*, 109 Cal. App. 4th 944 (2003) ..................................... 37, 48

*Frankel v. Bd. of Dental Examiners*,
   46 Cal. App. 4th 534 (1996) ................................................................45

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989)............................................................24

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
   527 F.3d 1318 (Fed. Cir. 2008)..................................................... 35, 53

*Heisig v. United States*,
   719 F.2d 1153 (Fed. Cir. 1983)...........................................................52

*Hennefer v. Butcher*,
   182 Cal. App. 3d 492 (1986)...............................................................44

*Inamed Corp. v. Kuzmak*,
   275 F. Supp. 2d 1100 (C.D. Cal. 2002),
   *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003).............................................44

*Jacobs v. Tenneco W., Inc.*,
   186 Cal. App. 3d 1413 (1986).............................................................36

*Kashmiri v. Regents of Univ. of Cal.*,
   156 Cal. App. 4th 809 (2007) .............................................................43

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
   919 F.2d 1579 (Fed. Cir. 1990)...........................................................51

*Little v. Pullman*,
   219 Cal. App. 4th 558 (2013) .............................................................15

*Mann v. Mueller*,
   140 Cal. App. 2d 481 (1956)...............................................................31

*Maynard v. City of San Jose*,
   37 F.3d 1396 (9th Cir. 1994)...............................................................52

*Olam v. Congress Mortg. Co.*,
   68 F. Supp. 2d 1110 (N.D. Cal. 1999) .................................................20

*Oosten v. Hay Haulers Emp. & Helpers Union*,
   45 Cal. 2d 784 (1955) .........................................................................20

*Osumi v. Sutton*,
   151 Cal. App. 4th 1355 (2007) ............................................................24

*Platt Pac., Inc. v. Andelson*,
   6 Cal. 4th 307 (1993) ..........................................................................35

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
   77 F.3d 309 (9th Cir. 1996)..................................................................34

*S & T Mfg. Co. v. Cnty of Hillsborough, Fla.*,
   815 F.2d 676 (Fed. Cir. 1987)..............................................................18

*S. Cal. Edison Co. v. Superior Court*,
   37 Cal. App. 4th 839 (1995) ......................................................... 37, 43

*Semitool, Inc. v. Dynamic Micro Sys. Semiconductor Equip. GmbH*,
   444 F.3d 1337 (Fed. Cir. 2006)...................................................... 18, 53

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013) .......................................................................19

*Steve Schmidt & Co. v. Berry*,
   183 Cal. App. 3d 1299 (1986)..............................................................35

*Stratoflex, Inc. v. Aeroquip Corp.*,
   713 F.2d 1530 (Fed. Cir. 1983).............................................................23

*Taylor v. Dep't of Interior*,
   34 F. App'x 766 (Fed. Cir. 2002) .........................................................19

*Terry v. Conlan*,
   131 Cal. App. 4th 1445 (2005) .............................................................46

*United States v. Rubio,*
  727 F.2d 786 (9th Cir. 1983)..................................................................51

*Unova, Inc. v. Acer Inc.,*
  363 F.3d 1278 (Fed. Cir. 2004)............................................................25

*Weddington Productions, Inc. v. Flick,*
  60 Cal. App. 4th 793 (1998) ...............................................................46

## STATUTES

Cal. Civ. Code § 1624 (b)(3)(D)................................................... 25, 28, 47

Cal. Civ. Code § 1638...................................................................................47

Cal. Civ. Code § 1639............................................................................ 47, 48

Cal. Civ. Proc. Code § 664.6 ......................................................................29

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Western Digital | Appellees Western Digital Corporation, Western Digital Technologies, Inc.; Western Digital (Fremont), Inc.; Western Digital (Thailand) Company Ltd.; and Western Digital (Malaysia) Sdn.Bhd. |
| Guzik or GTE | Appellant Guzik Technical Enterprises, Inc. |
| Br. | Guzik's Opening Brief |

## STATEMENT OF RELATED CASES

1.     Pursuant to Federal Circuit Rule 47.5(a), an appeal from the same civil action, Northern District of California Case No. 5:11-cv-03786-PSG (Magistrate Judge Paul S. Grewal), was previously before this Court.   Guzik brought the earlier appeal on August 21, 2013, *Guzik Technical Enterprises, Inc. v. Western Digital Corporation, et al.*, Case No. 13-1578.   Guzik later moved to withdraw the first appeal, and its motion was granted.

2.     Pursuant to Federal Circuit Rule 47.5(b), Western Digital is not aware of any other case that will directly affect or be directly affected by the Court's decision on this appeal.

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly held that, in light of the plain language of an eight-page written, signed agreement "to resolve all claims pending, or previously pending in the lawsuit" and setting forth all material terms of the settlement, and in light of repeated representations by Guzik to the district court that the parties had reached a settlement agreement, Guzik should be bound by the parties' written contract.

2.     Whether the district court committed reversible error by enforcing the parties' settlement agreement and dismissing the underlying action after reviewing all of the evidence provided by both parties.

## INTRODUCTION

After months of intensive negotiations, the parties in this action reached a settlement on November 29, 2013, and so ended a two-year litigation on the eve of trial.  Hardly an "agreement to agree," as Guzik now couches it, the settlement was comprehensive and was memorialized in an eight-page document entitled "Agreed Terms," which expressly states that the parties "hereby agree to the above terms to resolve all claims pending, or previously pending, in the lawsuit . . . ."  A205. Those "above terms" set forth all of the material terms of the settlement including, *inter alia*, the consideration to be provided, the dismissal of both parties' claims and defenses, mutual releases, covenants not to sue, and a myriad of business terms

1

that would govern their ongoing business relationship (hereinafter, the "Agreement"). Following the phrase "So Agreed," the Agreement was signed by Guzik's CEO and founder and then hand-delivered to Western Digital's counsel by another senior Guzik executive. Guzik then confirmed the settlement on several occasions including in joint filings to the district court, and at an oral hearing.

But then, buyer's remorse set in. Regretting the deal it made and hoping to deprive Western Digital of the benefit of its bargain, Guzik replaced its counsel and tried to back out of the Agreement. To this end, Guzik insisted that the parties jettison the signed Agreement and substitute it with a new, single-page document that sought to remove several key terms including Guzik's covenant not to sue Western Digital. The district court correctly rejected Guzik's efforts to erase the parties' settlement and granted Western Digital's Motion to Enforce Settlement. Guzik now strains to find error by arguing, based almost entirely on extrinsic evidence concerning negotiations of follow-on agreements its own counsel called "ancillary," that the plain meaning of the parties' contract should be ignored and that no settlement ever occurred, and by ascribing meaning to the district court's words that cannot be justified in context in order to allege an improper shifting of the burden of proof. Neither argument bears weight, and accordingly Western Digital respectfully asks this Court to hold Guzik to its agreement and to affirm the district court's dismissal of the underlying action.

2

## STATEMENT OF THE CASE

### A.    The Lawsuit Between Guzik and Western Digital

Western Digital is one of the world's leading manufacturers of hard disk drives and has been pioneering hard disk drive technology for over forty years. For many years, Guzik has manufactured high-end testers for engineering new disk drive designs, and Western Digital has been a major Guzik customer. After Guzik rejected Western Digital's requests to provide a smaller, simpler, and less expensive tester for its factory floors, Western Digital began to make these production testers for itself while continuing to buy engineering testers from Guzik.

In August 2011, Guzik filed suit in the Northern District of California alleging that Western Digital infringed more than 60 claims in two patents: U.S. Patent Nos. 6,025,145 and 6,785,085. A114-A126. Guzik also alleged that Western Digital misappropriated trade secrets and breached various provisions of two different contracts. A114-A126. Western Digital counterclaimed for infringement of four Western Digital patents and for declaratory judgment that Guzik's patents are invalid. A732-A737. The action was assigned to Magistrate Judge Grewal, and both parties consented to having Judge Grewal preside over the action in its entirety. A741-A742; A743-A744.

Over the following two years, the case was significantly reduced in scope as a result of certain concessions by Guzik, the parties' agreements, and the district court's orders on summary judgment motions. By the time trial was set to begin on December 2, 2013, Guzik had dismissed all of its trade secret claims, Guzik had only a single patent with 12 claims remaining, and its contract claims had been substantially narrowed. A750-A753; A810-A811.

## B.     The Parties Negotiated and Entered a Settlement Agreement

In July 2013, the parties began months of extensive negotiations to discuss a business resolution in advance of the scheduled December 2, 2013 trial date. A772 at ¶ 128; A194; A597. On July 31, 2013, Western Digital's Senior Vice President and Chief Procurement Officer, Rubik Babakanian, met with Guzik's CEO and founder Nahum Guzik to discuss a possible settlement. A194; A597. Following this meeting, Mr. Babakanian continued to negotiate with Dr. Guzik and other Guzik executives on multiple occasions. These settlement discussions continued over the next several months. A194.

On November 15, 2013, the parties' representatives met for several hours to discuss terms of a settlement. Attending for Guzik were Nahum Guzik, several other senior Guzik executives, and Guzik's outside counsel, James Gilliland and Anne Rogaski, both of Kilpatrick, Townsend & Stockton. A195; A597. Attending for Western Digital were Mr. Babakanian, two in-house attorneys, and Western

CONFIDENTIAL MATERIAL OMITTED

Digital's outside litigation counsel.  A195; A597.  Although the parties did not reach a settlement at that meeting, they agreed on several material terms including the financial terms that ultimately formed the basis of the Agreement.  A195; A597.  The parties continued to negotiate over the next two weeks, communicating daily by telephone and email, including on Thanksgiving Day.  A195.  On Friday, November 29, 2013, the parties reached a settlement agreement.

The terms of the settlement were set out in a document entitled "Agreed Terms" that was signed by Nahum Guzik and by Western Digital's General Counsel.  A206-A207.  The Agreement is eight pages long and contains all of the material terms of the settlement, including the financial and other key terms agreed to during the November 15 meeting.  A195.  For example, the Agreement provides:  the amount of money Western Digital is required to pay Guzik; specific future purchase order and sales obligations; the terms of a covenant not to sue granted by Guzik; the incorporation by reference of an existing contract that the parties had been operating under since 2004 and several express amendments to that prior contract; the agreement to file dismissals with prejudice of all remaining claims in this case; and various other terms of the deal.  A195; A199-A205.

More specifically, the Agreement states that Western Digital will pay a ▮▮▮ ▮▮▮▮ initial payment and issue purchase orders to Guzik over the next ▮▮▮ totaling ▮▮▮▮▮.  The Agreement imposes certain constraints on the

<u>CONFIDENTIAL MATERIAL OMITTED</u>

"[p]urchase order scope and pricing" by specifying that Guzik will adhere to its 2013 price list for the items on the list and that certain specified orders are excluded from Western Digital's ███████ purchase order commitment.  A199. The Agreement does not otherwise limit the scope of the purchase orders.

The Agreement concludes with a statement that the parties "***hereby agree to the above terms to resolve all claims pending, or previously pending***, in [this lawsuit]."  A205.[1]  As is common, the Agreement also contemplated that the parties would execute additional documents that would give effect to the settlement terms to which they had agreed, e.g., dismissal papers, a purchase order agreement, and a more extensive settlement agreement that would address ancillary terms and add detail to the Agreement that had already been entered.  A206; A269.

On November 29, 2013, Guzik's counsel brought the Agreement to Dr. Guzik at his home where he signed it.  A196; A206.  Guzik's counsel and another Guzik senior executive, then personally delivered the signed agreement to Western Digital's counsel.  A196.  The next day, Western Digital's General Counsel counter-signed the Agreement and that signature was provided to Guzik.  A196; A207.

---

[1] All emphases in quotations are supplied unless otherwise stated.

### C.    Guzik Repeatedly Confirmed the Parties' Settlement

The day after the parties settled the action, they confirmed their agreement to the district court by filing a document that by its very title—"Joint Notice of *Settlement*"—establishes that the parties had indeed settled the action.    The substance of the document confirms that settlement at least two more times:

> The parties hereby notify the Court that *they have reached agreement in a signed term sheet*, and jointly request for the trial to be taken off calendar while they *memorialize the term sheet* in further agreements. The parties expect this process to result in a dismissal shortly.  The parties will appear in court on Monday, December 2, 2013 at 9 a.m., to further discuss with the Court.

A163-A164.

The parties confirmed the settlement yet again when they appeared in court on Monday, December 2, 2013.  At that hearing, counsel for Guzik asked the court to take the trial off calendar because the parties had settled, had reached agreement on the "main terms of the settlement," and were continuing to negotiate only regarding "ancillary agreements":

> We still have a few issues we're working on on the *ancillary agreements*, but we are still talking and getting close, but we just need probably hopefully another day or so to get things wrapped up.

> So we wanted to alert you over the weekend that we had *reached an agreement with respect to the main terms* and are just really hammering out the details at this point.

A212.    These "ancillary agreements" included a more formal settlement agreement, purchase order agreement, non-disclosure agreement, and amendment

to the parties' existing master purchase agreement, and were to expand on the terms of the Agreement.  A206; A269.

Counsel for Western Digital also informed the district court that the parties had reached a settlement agreement:  "***we have a signed term sheet that we see as binding*** that resolves the need for a trial, and the agreements are making their way through the process."  A212.  Despite the fact that the parties were already exchanging competing proposals concerning how to word the purchase order scope and other terms of the ancillary documents (A372-A539), at no point during the hearing did counsel for Guzik express any disagreement with Western Digital's representation that the signed term sheet was binding or assert that the settlement was contingent on executing any further agreements.  A211-A217.

At the hearing the district court reviewed the Agreement and ruled that a settlement had been reached.  After considering the Agreement and confirming it was signed by both Guzik and Western Digital, the district court stated:  "I've reviewed the term sheet and, in light of the signatures and the representations of counsel, I will vacate this trial."  A214.  The court then issued a Civil Minute Order stating that the "***Case has settled***."  A165.  Again, despite the exchanges between the parties of proposals concerning how to draft the ancillary agreements, including the scope of purchase orders that would count toward Western Digital's

obligations, (A372-A539), Guzik never objected to the Minute Order or the district court's determination that the parties had agreed to settle the action.

Negotiations on the ancillary documents began immediately. By the end of the first day after signing the Agreement, the parties had already exchanged drafts of several of the documents. A372-A402; A404-A405; A407-A409; A411-A442. The parties continued to exchange proposals and counter-proposals concerning the ancillary agreements. A444-A469; A471-A497; A499-A500; A502-A509; A511-A534; A536-A537; A539; A541-A564. In the redlines and emails that went back-and-forth, both parties deviated from the terms of the Agreement and, not surprisingly, engaged in "horse trading" in an effort to improve on the Agreement from their perspectives. A372-A402; A411-A442; A444-A469; A471-A497; A499-A500; A502-A509; A511-A534; A536-A537; A539; A541-A564. For example, while the Agreement stated that "Western Digital may continue to use the EH-300 and DCT-400 testers that are already built" (A201), Guzik proposed in a draft of one of ancillary agreement that "[Western Digital] shall not sell those testers except (i) in connection with a corporate acquisition or divestiture transaction, or (ii) for any inter-company sales or transfers exclusively between [Western Digital] and its affiliates and/or exclusively between [Western Digital] affiliates" (A390), which was beyond the plain language of the Agreement. To compromise, Western Digital agreed to this modification of the prior agreement.

9

A435.  But, central to this appeal, these exchanges were always in the new, ancillary agreements and, until Guzik replaced its counsel and attempted to repudiate, neither party in any way stated or suggested that the negotiations of the ancillary agreements meant that the Agreement was not fully binding on them both.   A372-A402; A411-A442; A444-A469; A471-A497; A499-A500; A502-A509; A511-A534; A536-A537; A539; A541-A564.

### D.    Guzik Hired New Counsel and Attempted to Renegotiate the Agreement

In the midst of the ongoing negotiations over three remaining issues in the ancillary documents (A185; A253), Guzik suddenly reversed field.  First, Guzik informed Western Digital that it had engaged an additional law firm (the McDermott firm) and that its new attorneys had concerns about the draft agreements.  A196.  Then, on December 6, 2013, Guzik stated that it would no longer discuss the finalized and near-final draft ancillary documents and, instead, Guzik would only agree to a never-before-seen, one-page document that set out nine points that Guzik's counsel admitted was "a wholly-rewritten Settlement Agreement."  A220.  Guzik's "nine points" excluded several key terms explicitly set out in the signed Agreement (including a critical covenant not to sue and agreed amendments to the prior 2004 contract under which the parties had been operating), re-wrote other terms from the Agreement, and added entirely new terms including a requirement that Western Digital provide Guzik with a forecast of

<u>CONFIDENTIAL MATERIAL OMITTED</u>

products to be ordered in January of each year with an accuracy within 10% of actual future purchases.  A221.

Guzik's purported basis for rejecting all prior negotiations and proposing a "wholly-rewritten" agreement was that "the prior drafts are so long and detailed that they are not workable for an ongoing business relationship."  A220.  Notably, Guzik did not suggest that its change in position had anything to do with the scope of purchase orders covered by the Agreement.  A566.  On the contrary, and directly contradicting Guzik's core argument in this appeal, Dr. Guzik's own efforts to distill down the parties' agreements in the "nine points" document explicitly notes that the purchase orders Western Digital is to issue will be "███████

████████████████████████████████████████████████████

████████████████████████████████████████"  A605.  Put simply, even the "nine points" document in no way states or suggests that the purchase orders would be limited only to items listed in the Guzik 2013 price list or in any other way suggested by Guzik in its opening brief.  A605.  Consistent with this, Dr. Guzik's annotations to the "nine points" document also did not identify the scope of purchase orders as a point of disagreement.  A603-A612.

Because of Guzik's change of course, on December 13, 2013, the parties filed a Joint Request For a Telephonic Status Conference.  A817-A820.  Guzik still did not suggest that the negotiations of the ancillary agreements meant that the

Agreement was not fully binding on it.  In fact, the Joint Request stated in its very first sentence:  "On December 2, 2013 the parties appeared before the Court and informed the Court that ***they had signed a settlement agreement***."  A818.  In opposition to Western Digital's motion to enforce the settlement Guzik attempted to distance itself from this statement and submitted the declaration of its counsel, James Gilliland, stating that he later sought to retract approval to file this document but was too late.  A270.  Strikingly, Mr. Gilliland, who was directly involved in negotiating the Agreement, did *not* attest that the joint statement was untrue or that he believed the parties had not entered a binding settlement agreement.  A270.  On the contrary, Mr. Gilliland further acknowledged that the parties had reached a settlement by declaring that "the parties began preparing four agreements to try ***to further memorialize a settlement*** . . . ."  A269.

### E. The Court Granted Western Digital's Motion to Enforce the Agreement

In light of Guzik's refusal to comply with the Agreement, Western Digital promptly filed a motion to enforce the settlement based on the express terms of the Agreement and further based on judicial estoppel.  A178-A197.  Western Digital

submitted the Agreement and other relevant evidence including communications between the parties, court filings, and hearing transcripts.[2]  A198-A240.

In response to Western Digital's motion, Guzik argued for the first time that the scope of purchase orders under the Agreement was uncertain and therefore the agreement was not binding.  A253-A256.  Guzik also asserted that the Agreement was "unenforceable for lack of mutuality" because it allegedly granted Western Digital an unrestricted, unilateral right to terminate the agreement.  A256-A257, A260-A261.  And Guzik argued that, despite its representations to the district court that the case had settled, judicial estoppel did not apply.  A262-A264.

On March 21, 2014, the district court issued an Order that determined for a second time that a settlement agreement had been reached, that the settlement had been repeatedly confirmed to him by Guzik's counsel, that its terms were sufficiently definite, and that the written Agreement was an enforceable contract. A1-A12.  After finding, again, that a contract had been formed, the district court held that Guzik had not proven that the contract was invalid or unenforceable, and

---

[2] Guzik implies ill intent from the fact that the Guzik price list was not included with the exhibits to this first filing.  Br. at 15 ("Other than a declaration from its counsel, Western Digital submitted little evidence in support of its motion, such as the term sheet (conspicuously without the 2013 price list attachment), and copies of the transcripts of the two status conferences.").  In fact, as explained to its counsel and the district court, this was nothing more than a clerical error. A694:21-25 ("Again, I want to represent to your Honor, there was no ill intent in not submitting the price list.").  This point, in any event, is an irrelevant diversion: The district court had the price list in evidence, and considered it.

that Guzik could not evade its obligations.  Accordingly, the district court granted Western Digital's motion to enforce the settlement (A1-A12), and entered judgment and dismissed the action on May 19, 2014.  A710-A711.  This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion by enforcing the Agreement and dismissing the district court action.  The district court correctly found that the parties had entered a contract to resolve all claims and counterclaims in this action.  This finding was supported by the plain text of the Agreement itself and by Guzik's repeated acknowledgements of the settlement to the district court.

Guzik's primary argument on appeal is that the district court misallocated the burden of proof by requiring Guzik to prove that the parties' settlement agreement was unenforceable.  Br. at 21-30 ("The District Court Erred In Imposing the Burden of Proving That a Settlement Agreement Existed on the Non-Moving Party, GTE").  This is incorrect, and Guzik's burden of proof argument is premised on an opportunistic misreading of a handful of sentences taken out of context from the district court's Order.  The district court's statement that "GTE has the burden to prove that the term sheet is unenforceable" (A4), should not be looked at in a vacuum, but in the context of the Order as a whole.  In that light it is clear that the district court *first* determined that a settlement had occurred because all of the

14

material terms had been agreed to and memorialized in the Agreement in a sufficiently definite manner.    A5-A7 (Section A entitled "The Terms Sheet Contains All the Material Terms") and A7-A11 (Section B entitled "The Material Terms Are Sufficiently Definite").    Only then did the district court turn to Guzik's unenforceability arguments—including an argument Guzik has since abandoned that contended the termination clause of the Agreement was illusory—and reject them as not well-taken.    A11.    This is exactly the approach required under California contract law.    *See, e.g.*, *Little v. Pullman*, 219 Cal. App. 4th 558, 565 (2013) ("The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.") (citation and internal quotations omitted).

Guzik also argues that, at most, the Agreement was an "agreement to agree" that only required the parties to negotiate in good faith.    But that characterization cannot be reconciled with the plain text of the Agreement and Guzik's actions confirming the parties' settlement.    That the parties agreed to execute other ancillary documents after signing the Agreement is unremarkable and of no moment.    California law holds that parties can bind themselves to a contract when the material terms have been agreed, even if other aspects of the overall business deal between the parties will be documented later.

Guzik additionally argues that a single term of the Agreement—the term governing the scope of future purchase orders—is ambiguous, thus rendering the entire Agreement uncertain and therefore unenforceable. Again, the district court did not abuse its discretion in rejecting this same argument. For one, the interpretation that Guzik now argues should be applied to the Agreement is directly contradicted by the express language of the Agreement itself, and Guzik's self-serving read of the language should not be credited. Moreover, even assuming *arguendo* that the scope of the purchase orders term was indefinite and therefore lacking in the Agreement, the Agreement would nonetheless be enforceable.

Under California law, if a term—even a material term—is indefinite or omitted, the analysis turns to whether that term is a "necessary" one without which there can be no contract or, instead, a term which, even if important, affects only the "value" of the bargain. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037-38 (9th Cir. 2011). While the absence of a necessary term may render a contract unenforceable, the absence of a term that impacts only the value of the agreement need not. *Id.* at 1038. Here, the scope of the purchase orders to be submitted by Western Digital goes only to the value of the agreement. The amount Western Digital must pay up-front, and the total amount of purchase orders it must issue, are not disputed, and the scope of the purchase orders that count toward the total affects only ***when*** that total purchase order obligation is met. Should there be

a dispute about that inchoate question in the future, it would be an issue that a judge or jury could assess as an alleged breach. Accordingly, the Agreement is an enforceable contract. *Id.* at 1037-38 (finding the mere omission of an "important term that affects the value of the bargain" will not render the contract unenforceable, "so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages").

Lastly, Guzik argues that the district court improperly relied on attorney argument and failed to consider extrinsic evidence. The record belies both assertions. The single statement Guzik identifies as attorney argument cited in the Order was "accepted" as fact by Guzik's counsel at the hearing. It is hardly reversible error or an abuse of discretion to rely on a fact that both parties agree is undisputed. And the district court did not ignore any evidence, but noted at the outset of the motion hearing that it had carefully considered the evidence submitted by both sides.

In short, Guzik should be held to the comprehensive agreement it negotiated and signed, and the district court's dismissal of the underlying action should be affirmed. Guzik's arguments to the contrary lack merit and should be rejected.

## ARGUMENT

## I.    STANDARD OF REVIEW

For this appeal, this Court applies the law of the Ninth Circuit and reviews the district court's enforcement of the Agreement for an abuse of discretion. *S & T Mfg. Co. v. Cnty. of Hillsborough, Fla.*, 815 F.2d 676, 678 (Fed. Cir. 1987) (regional circuit law governs non-patent issues); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136 (9th Cir. 2002) (enforcement of settlement agreement reviewed for abuse of discretion).

The district court's factual finding that the parties entered into a settlement agreement is reviewed for clear error, and its legal conclusions, including contract interpretation, are reviewed *de novo*. *Bay Area Typographical Union, Union No. 21 v. Alameda Newspapers, Inc.*, 900 F.2d 197, 199 (9th Cir. 1990) ("[W]e treat findings regarding the parties' intent to create a contract as factual, and apply the clearly erroneous standard of review."); *Semitool, Inc. v. Dynamic Micro Sys. Semiconductor Equip. GmbH*, 444 F.3d 1337, 1341 (Fed. Cir. 2006) ("Under California law, 'the interpretation of a contract is a question of law subject to de novo review' on appeal.") (citation omitted).

## II.   GUZIK'S BURDEN OF PROOF ARGUMENT SHOULD BE REJECTED

### A.   The District Court Did Not Misassign the Burden of Proof

The main thrust of Guzik's appeal is that the following four lines from the district court's Order should be read to mean that the district court ascribed to Guzik the obligation to prove that no settlement had ever been reached:

> "A settlement agreement is binding on the parties, and a party challenging the validity of a settlement agreement carries a heavy burden."   Because the signed term sheet purports "to resolve all claims pending, or previously pending in the lawsuit," GTE has the burden to prove that the term sheet is unenforceable.

A4 at 4:5-9 (quoting *Taylor v. Dep't of Interior*, 34 F. App'x 766, 767 (Fed. Cir. 2002) and the Agreement (A205)) (further citing *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.")).   This is not a faithful reading of the district court's Order.   The district court did not shift the burden of proving that no contract was formed to Guzik.

Put simply, Guzik gets the order of events wrong.   The law is clear that, once the fact of an agreement has been established, a party seeking to escape that contract has the burden of proving its alleged invalidity or unenforceability.   *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013) (placing the burden to show defense of unconscionability on the party seeking to escape a contract); *Facebook*, 640 F.3d at 1038-41 (finding an enforceable settlement agreement and

19

then placing the burden on the party attempting to defeat it to show a securities fraud-based unenforceability defense to the agreement); *Cohn v. Bugas*, 42 Cal. App. 3d 381, 391 (1974) (holding that the burden of proof to prove fraud or the inadequacy of consideration was on the party moving to void the contract on those grounds); *Oosten v. Hay Haulers Emp. & Helpers Union*, 45 Cal. 2d 784, 788 (1955) ("Impossibility of performance is a defense and the burden of proof in establishing it rests on defendant."); *Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1139-40 (N.D. Cal. 1999) (enforcing settlement agreement upon a finding that a *prima facie* case had been set forth that the parties had entered a valid, contract, and holding that the non-movant bore the burden of proof that the contract was  unenforceable for undue influence); *see also* CACI 330-338 (California Model Jury Instructions placing the burden of proving contract defenses on the party asserting those defenses).

The select passages Guzik cites merely preview the district court's ultimate conclusion that a contract had been formed by the parties.  The district court did not assume that a contract existed, and it did not impose the burden on Guzik to prove otherwise.  On the contrary, the vast majority of the district court's Order is dedicated to evaluating whether a contract had been formed. *See, e.g.*, A5-A11 at 5:4-7:12 (Section A entitled "The Terms Sheet Contains All the Material Terms") and 7:13-11:4 (Section B entitled "The Material Terms Are Sufficiently Definite").

In these sections, the district court analyzed the specific terms in the Agreement, the parties' repeated representations that they had settled, and the law governing the existence of the contract, as is appropriate under California law. *Id.* Based on this analysis, the court concluded that a contract had been formed. A11 ("At the time of signing, both GTE and Western Digital intended to enter into an agreement and intended it to end all litigation"); A8 ("The term sheet is sufficiently definite to determine both a breach of the agreement as well as damages arising therefrom."). The court then also rejected Guzik's contentions that the contract was unenforceable because its purchase order term was indefinite and because the termination clause was purportedly illusory. *Id.*, and *id.* at 11:5-20.

When the district court's Order is viewed as a whole, it is clear that the court applied the proper analysis. On its face, even the passage of the Order on which Guzik so heavily leans refers to an ***existing*** settlement agreement between the parties. A4 (referring to the parties' "settlement agreement" and the "signed term sheet"). The same is true for the district court's citation to *Callen* that also relates to an attack by a party on "the contract he has made." A4 n.15; *see Callen*, 332 U.S. at 630. In this way, the district court's Order simply recognizes the black-letter law that, once the court determines there is an existing contract between Guzik and Western Digital, Guzik must then prove that the agreement should be invalidated or rendered unenforceable. A4.

Moreover, the district court had actually determined that a settlement existed even before the Motion to Enforce. As noted above, the district court had already concluded and noted in an earlier Minute Order that based on its in-court review of the Agreement and the representations of both parties' counsel, the "[c]ase has settled." A165. Thus, by the time of the motion, the *existence* of the contract had already been established. Nonetheless, the district court analyzed the question again and reached the same conclusion in its Order before mentioning Guzik's burden when seeking to undo the existing settlement agreement. A2 at 2:8-10 ("As explained below, because the necessary terms were agreed upon without qualification and sufficiently definite, the court GRANTS Western Digital's motion."); A3 at 3:3-15 ("On November 30, 2013, the parties filed a 'Joint Notice of Settlement,' representing that the parties had 'reached an agreement in a signed term sheet' . . . the parties appeared before the court with the news that they 'reached an agreement with respect to the main terms and are just really hammering out the details at this point' . . . Based on this representation, the court sent the jury home and noted on the docket that the 'case has settled.'").

In sum, Guzik extracts sentences from the district court's Order in the abstract to manufacture the specter of reversible error where none occurred. When viewed in proper context, the record establishes that the district court properly assessed whether the parties had reached a settlement agreement in the first place,

and did not ascribe to Guzik the burden of proof on that question. Once the existence of the contract was established, the court properly determined that Guzik failed to prove that the Agreement was invalid or unenforceable.

### B. Even Had the District Court Erred in Stating the Burden of Proof, This Court Should Affirm the Judgment Anyway

This Court has noted that "we sit to review judgments, not opinions." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983) (affirming district court's summary judgment of obviousness despite referencing the incorrect legal standard). Should the Court determine that the district court improperly stated the burden of proof in its Order, it should still affirm the judgment that the parties entered into a binding settlement agreement that resolved the action and compelled its dismissal.

Here, for the reasons set forth in detail in Section III, *infra*, even if Western Digital bore the burden of proving the existence of a contract *and* disproving Guzik's defense to the contract, the undisputed evidence shows that (i) a contract with the material terms of the settlement was formed; and (ii) the contract was not indefinite. Thus, even if the Court disagrees with the articulation of any legal standards in the district court's opinion, it should affirm the district court's judgment enforcing the settlement and dismissing the case.

## III.   THE DISTRICT COURT'S JUDGMENT THAT THE PARTIES EXECUTED A BINDING SETTLEMENT AGREEMENT SHOULD BE AFFIRMED

As this Court has noted, "[i]t is long established that courts favor dispute resolution through voluntary settlements . . . 'Those who employ the judicial appellate process to attack a settlement through which controversy has been set to rest bear a properly heavy burden.'" *Core-Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252, 1259 (Fed. Cir. 1995) (citations omitted).

California, in particular, has a "strong public policy in favor of the settlement of civil cases." *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357, 1360 (2007); *see also Facebook*, 640 F.3d at 1039 ("There are also very important policies that favor giving effect to agreements that put an end to the expensive and disruptive process of litigation.") (citing *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.")).  Accordingly, on appeal California courts of appeal have resolved all "evidentiary conflicts and draw[n] all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement." *See, e.g.*, *Osumi*, 151 Cal. App. 4th at 1360.

Here, the parties settled this action, reduced that settlement to an eight-page document signed by their senior executives, and repeatedly confirmed the

agreement to the district court.  Because, as shown below, the Agreement includes all of the material terms of the parties' settlement and is amply definite, the district court was correct to enforce the Agreement and dismiss the action.

This Court should affirm.

### A.     The Executed Agreement Includes All Material Terms and Definitively Establishes the Parties' Agreement to Settle

California law governs the contract issues in this appeal.  *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1280 (Fed. Cir. 2004).   Under California law, "[t]here is sufficient evidence that a contract has been made" where "[t]here is a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker."   Cal. Civ. Code § 1624 (b)(3)(D).   That writing need not be a comprehensive and polished contract; much less can establish a settlement agreement.   *See, e.g.*, *Estate of Thottam*, 165 Cal. App. 4th 1331, 1340 (2008) (finding a settlement agreement based on a chart that was "lacking in formality" and had "no complete sentences nor formal descriptions of the assets being addressed").

Here, the parties' settlement was documented in the Agreement, which includes all of the material terms of the parties' agreement.   The Agreement is entitled "Agreed Terms."   A199.   The purpose of the Agreement to itself settle the action is unambiguously stated in its explicit text:

<u>**CONFIDENTIAL MATERIAL OMITTED**</u>

[The parties] ***hereby agree to the above terms to resolve all claims pending, or previously pending, in the lawsuit*** entitled *Guzik Technical Enterprises, Inc. v. Western Digital Corporation*, [et. al.] Case No. 5:11-CV-03-786-PSG.

A205.

The Agreement was signed by Guzik's CEO, founder, and senior-most executive, Nahum Guzik. A206. His signature appears immediately below the statement: "So Agreed." A206-A207. Guzik's senior executive, Alexander Varlakhanov, then personally delivered the signed agreement to Western Digital's counsel on the same evening it was signed. A196. Western Digital's General Counsel signed the following day. A196; A207.

The Agreement includes all of the essential terms to achieve its foremost goal—settling the lawsuit between the parties. In particular, the Agreement sets out the following terms in great detail:

- The compensation Guzik will receive, including both an up-front ▇ ▇ payment and commitments by Western Digital to place ▇ ▇ in purchase orders over ▇▇▇ , A199 ("Settlement payment"; "Purchase orders"; and "Number of Years under Purchase Order Agreement");

- The pricing to be applied to Western Digital's purchases will be those listed in Guzik's 2013 price list for the goods, software, or services on the list, *id.* ("Purchase order scope and pricing");

**CONFIDENTIAL MATERIAL OMITTED**

- ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████, *id.*
  ("Purchase order scope and pricing");

- ██████ ██ ██████ █████ ██████ █████ ████████

  ████████████████████████████████████████

  ████████████████████████████████████, *id.*
  ("Purchase order scope and pricing");

- The timing for purchase orders, minimum orders, and an option to pre-pay, A200 ("Purchase Order placement");

- Restrictions on Western Digital's ability to sell or transfer systems it buys from Guzik, *id.* ("Internal Use Only");

- ████████████████████████████████████████

  ████████████████████████████████████████

  *id.* ("Slider Testers");

- A critical covenant by Guzik not to sue Western Digital ████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ██████████████████████, A201 ("Covenant not to sue");

27

**CONFIDENTIAL MATERIAL OMITTED**

- , *id.* ("Covenant not to sue");

- , *id.* ("Existing EH and DCT testers");

- , *id.* ("New testers");

- Releases by each party and obligations to dismiss the action with prejudice, A202 ("Dismissal and Release");

- An agreement to be bound by the parties' prior Master Purchase Agreement as amended in the Agreement, *id.* at A203 ("Governing Agreement); and

- A myriad of other details governing the parties' settlement and ongoing business relationship, *id.* at A202-A205.

In sum, every material term of the parties' settlement agreement is spelled out in a properly-executed writing and in detail that far exceeds the level needed to establish a binding contract under California law. *See* Cal. Civ. Code § 1624 (b)(3)(D); *Estate of Thottam*, 165 Cal. App. 4th 1331. This Court should affirm

that a binding contract was formed, and affirm the district court's decision to enforce it.

## B.     Guzik's Repeated Confirmations of the Settlement Confirm the Parties' Agreement

Oral representations to a court that parties have settled support the conclusion that a settlement agreement was reached. *Blix Street Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48-49 (2010); *see also* Cal. Civ. Proc. Code § 664.6 (when parties "stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement"). Here, Guzik *repeatedly* confirmed to the district court that the parties settled the underlying action.

First, Guzik jointly submitted a document entitled "Joint Notice of *Settlement*." A163-A164. That document informed the court that that the parties had "*reached agreement* in a signed term sheet," and that they would "memorialize the *term sheet* in further agreements." *Id*.

Then, two days later, Guzik stated in open court that the parties "*reached an agreement with respect to the main terms* and are just really hammering out the details at this point." A212. And Guzik sat silent, tacitly agreeing with Western Digital when it informed the court that "*we have a signed term sheet that we see as binding* that resolves the need for a trial, and the agreements are making their

way through the process." A212. At the hearing the district court reviewed the Agreement while the parties waited, and then stated on the record: "I've reviewed the term sheet and, in light of the signatures and the representations of counsel, I will vacate this trial." A214. The court then issued a Civil Minute Order stating that the "***Case has settled***," (A165), to which Guzik never objected.

Next, less than two weeks later, the parties filed a Joint Request For a Telephonic Status Conference stating again that "***they had signed a settlement agreement***." A817.

It was only after Guzik replaced its counsel that it changed its position and alleged for the first time that there was never a settlement agreement between the parties. A230-A232.[3] It was this reversal of field that necessitated Western Digital's motion to enforce the settlement and culminated in this appeal. This strained effort by Guzik to escape its obligations under the Agreement cannot be squared with the repeated, clear, and unmistakable representations to the district court that the parties had settled the action. Accordingly, the district court's enforcement of the Agreement and dismissal of the action should be affirmed.

---

[3] In its opening brief on appeal, Guzik emphasizes a statement from Western Digital's counsel that "we have a disagreement over whether this case is formally settled" (Br. at 14), and implies that this amounts to a concession that the parties had never reached a settlement. The statement, of course, refers to Guzik's new position that there was no settlement, but hardly concedes the point. A229:16-22. Rather, Western Digital's counsel maintained that the Agreement was binding. A234:3-A235:10 ("[T]he Settlement Agreement has all the material terms in it. It resolves this lawsuit.").

### C.    The Expectation That Ancillary Agreements Would Be Drafted Does Not Render the Agreement Unenforceable

Guzik contends that the following statement in the Agreement proves that it was merely an "agreement to agree":

> The parties will work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreements reasonably necessary to effect the above terms.

Br. at 31-33 (citing A206).  This argument cannot be sustained.

It is well-established in California that where parties "have agreed in writing upon the essential terms of their contract, even though several more formal instruments are to be prepared and signed later, the written agreement which they have already signed is a binding contract."  *Mann v. Mueller*, 140 Cal. App. 2d 481, 487 (1956); *see also Blix Street Records*, 191 Cal. App. 4th at 48-49.  Indeed, California law permits parties to bind themselves to a contract, even when they anticipate that "some *material* aspects of the deal [will] be papered later." *Facebook*, 640 F.3d at 1038.

The Ninth Circuit's decision in *Facebook* is particularly relevant to this appeal.  In *Facebook*, the parties signed a hand-written, one-and-a-third page "Term Sheet & Settlement Agreement" resolving the lawsuit.  *Facebook*, 640 F.3d at 1037.  Under that term sheet, the plaintiff's principals, the Winklevosses, agreed to give up their company, ConnectU, in exchange for cash and common stock in Facebook.  *Id.* at 1037.  The parties also agreed to mutual releases in the term

sheet. *Id.* To effect the transfer of shares by both parties, more than 130 pages of follow-on documents were drafted and presented for signature after the parties had already executed the term sheet. *Id.* Ultimately, the "settlement fell apart during negotiations over the form of the final deal documents, and Facebook filed a motion with the district court seeking to enforce it." *Id.* Applying California law, the Ninth Circuit stated the basic rule as follows:

> [A] contract that omits terms of the latter type [terms that affect the value of the bargain] is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages.

*Id.* at 1038. Then, applying that rule, the Ninth Circuit held that the term sheet "leaves no doubt that the Winklevosses and Facebook meant to bind themselves and each other, even though everyone understood that some material aspects of the deal would be papered later." *Id.* Accordingly, the Ninth Circuit affirmed the district court's enforcement of the settlement and held that the "district court got it exactly right when it found the Settlement Agreement enforceable" even where it refused to add the other, never finalized draft deal documents. *Id.*

Here, as in *Facebook*, the district court properly enforced the settlement based on the parties' executed agreement even though they were unable to finalize and execute later agreements contemplated by the Agreement. The instant eight-page Agreement includes far more detail than the one-and-a-third page term sheet

in *Facebook*, and includes the same fundamental terms for resolving the parties' disputes as found in *Facebook*. *See* 640 F.3d at 1037 ("The parties agreed that Facebook would swallow up ConnectU, the Winklevosses would get cash and a small piece of Facebook, and both sides would stop fighting and get on with their lives."). Among other terms, the instant Agreement sets out the consideration Western Digital will pay to Guzik and its obligation to issue future purchase orders, includes releases by both parties of the claims raised in the action, includes covenants not to sue by Guzik, and requires both parties to dismiss their claims and defenses with prejudice. A199-A206. Under *Facebook*, nothing more is required, and far less would suffice. 640 F.3d at 1038.

The cases Guzik relies upon (Br. at 31), are inapposite and address agreements that expressly note the parties' intent *not* to be bound until a future contract was negotiated and signed. For example, in *Beck v. American Health Group International, Inc.*, the court found that the letter signed by the parties did not establish a binding contract because, on its face, the letter made clear that there was not yet a contract. 211 Cal. App. 3d 1555, 1562 (1989). In the letter, the parties stated that "[i]t is a pleasure to draft the outline of our *future agreement*"; that "if this is a general understanding of the agreement" it would be used "*for the drafting of a contract*"; and that "[w]hen we have a draft, we will discuss it, and *hopefully shall have a completed contract* and operating unit in the very near

33

future.'" *Id*. at 1562-63 (emphases in original). The court concluded that "the words of the letter manifest an intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel." *Id.* at 1563.

Likewise, in *Rennick v. O.P.T.I.O.N. Care, Inc.*, the court found that a handshake agreement or a subsequent letter of intent did not form a binding contract because the purported oral agreement was reached at a meeting, but the meeting "agenda assured the parties that the July 3 meeting would not bind them, and would merely develop a 'proposed' agreement 'for Board approval of all parties.'" 77 F.3d 309, 313-14 (9th Cir. 1996). Moreover, the letter of intent in that case stated that the parties "agreed to negotiate further, and agreed that we had no contract unless and until we put it in writing and our boards of directors approved it." *Id.*

Unlike in *Beck and Rennick*, here the parties included no similar language in the Agreement suggesting that the settlement would only become binding after further documents were negotiated and signed. *See Beck*, 211 Cal. App. 3d at 1562-63; *Rennick*, 77 F.3d at 313-14. Directly opposite to these cases, the Agreement expressly states that the parties "***hereby agree to the above terms to resolve all claims pending, or previously pending***," in the lawsuit. A205.

**CONFIDENTIAL MATERIAL OMITTED**

Guzik makes a similarly flawed argument that the Agreement's requirement that Western Digital make the initial ▮▮▮▮▮ settlement payment 30 days after the parties entered the formal settlement agreement and purchase order agreement establishes that no agreement was ever reached. Br. at 32. This argument also misconstrues the law. California law is clear that a valid, enforceable contractual obligation may be "condition[ed] upon the occurrence or nonoccurrence of an act or event" or the passage of time. *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993). The payment term cited by Guzik merely applies to the timing of Western Digital's obligation to pay ▮▮▮▮▮; not whether the obligation exists. *See, e.g.*, *Steve Schmidt & Co. v. Berry*, 183 Cal. App. 3d 1299, 1309-10 (1986) (distinguishing the obligation to pay a commission from the timing of payment). Moreover, Guzik did not raise with the district court its argument on appeal that the initial ▮▮▮▮▮ settlement payment is evidence of lack of agreement. This argument accordingly should not be entertained on appeal. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322-1323 (Fed. Cir. 2008) (arguments raised for the first time on appeal are properly disregarded). To the contrary, Guzik's counsel, when explaining to the district court his purported concerns about the contours of the ▮▮▮▮▮ in purchase orders, stated that ▮▮▮▮▮ is easy. Right there. We've got the money." A671.

Finally, Guzik cannot negate the Agreement by refusing unilaterally to negotiate the contemplated ancillary agreements. *Jacobs v. Tenneco W., Inc.*, 186 Cal. App. 3d 1413, 1418 (1986) ("A party who prevents fulfillment of a condition of his own obligation . . . cannot rely on such condition to defeat his liability.") (ellipses in original) (citations omitted).

In sum, California law recognizes that, if the necessary terms are included in a signed written agreement, a binding contract exists despite terms requiring the parties to draft further follow-on agreements. The instant Agreement falls squarely within this governing law, and its unremarkable term requiring the parties to negotiate additional, ancillary documents in no way detracts from the fact that the parties explicitly settled the underlying action.

### D.    The Agreement Is Sufficiently Definite

Guzik contends that the Agreement is not enforceable because Guzik now disputes the scope of purchases that will count towards Western Digital's purchase order commitments under the Agreement. Br. at 40-47. But this term in the Agreement is clear as to the scope of goods that are included and excluded from that commitment. And, even assuming *arguendo* that the term was to be found ambiguous, that would still fall far short of an infirmity rendering the Agreement invalid or unenforceable as a whole.

CONFIDENTIAL MATERIAL OMITTED

### 1. The Scope of Purchases That Apply to the Purchase Order Commitment Is Clear and Definite

Contract interpretation is determined by an objective evaluation of the surrounding facts, including the plain language of the agreement itself. *Founding Members of Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("California recognizes the objective theory of contracts under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.'") (citations omitted).

A contract term is ambiguous only if there are two ***reasonable*** competing interpretations of that term. *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 848 (1995). A proposed interpretation is not "reasonable" where it contradicts the plain language of the contract. *City of Fresno v. People ex rel. Fresno Firefighters, IAFF Local 753*, 71 Cal. App. 4th 82, 98-99 (1999). Here, Guzik's argument that the Agreement allows only the goods on Guzik's 2013 price list to be counted toward Western Digital's purchase order obligations over the next ███████ falls far short of reasonable. As the district court found, "GTE's argument that purchase orders are limited to only those goods/services on the Price List contradicts language in the document itself." A8.

Guzik relies on a single sentence in the "purchase order scope and pricing" section of the Agreement. Br. at 36. As its title suggests, this section of the

**CONFIDENTIAL MATERIAL OMITTED**

Agreement addresses two different issues:  (i) pricing, and (ii) the scope of purchases included under the Agreement.  A199.  The passage Guzik relies on comes first, and expressly addresses pricing only:  "█████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████"  A199.  This paragraph says nothing about the scope of purchases that will, or will not, be included under the Agreement.  The extrinsic evidence that Guzik touts in its brief concerning the drafting of this term (Br. at 7-9), establishes only that Guzik refused to state that it used "fair market prices" in its price list—a representation Western Digital requested—not that the parties agreed to limit the scope of the purchase orders only to those for goods listed in the price list.  The end result of this exchange of redlines, in any event, is the governing contract language set forth above which, on its face, goes to the ***pricing*** of the goods, and not to the scope of what is counted.  A199.

The remainder of the section proceeds to address expressly the scope of purchases under the agreement by identifying specific exclusions from, and inclusions in, the "annual payments" calculation under the Agreement.  For example, the second paragraph states that the "███████████████████

████████████████████"  A199.  The third paragraph also goes to scope and states: "█████████████████████████████████████

**CONFIDENTIAL MATERIAL OMITTED**

█████ ” A199.  And the fourth paragraph follows suit and states:  “█████████

████████████████████████████████████████████████████████████

█████ ” A199.  The first pricing paragraph uses no such language, and these

scope sections of the Agreement never say in words or substance that only

purchases of items on the 2013 price list will be counted toward Western Digital's

purchase order commitment.  On the contrary, the Agreement plainly contemplates

purchases for new, custom-made items that would not be on the pre-existing price

list when it includes goods resulting from NRE ("non-recurring engineering") fees.

Such goods would result from custom modifications, which by their nature are not

identified on Guzik's standard price list, and yet they are explicitly included in the

scope of purchases under the Agreement.  A601; A199.

Moreover, the next section of the Agreement sets out terms related to the

placement of purchase orders and, again, says nothing to suggest that those

purchase orders would be limited only to items on the 2013 price list:  “█████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ ” A200.  The "Guzik System

Pricing 2013" list provides the total price for a Guzik tester and itemized pricing

for the various components, but it does not provide a complete price list for “█████

████████████████████████████████████ ” though Western Digital is

expressly authorized to issue purchase orders under the Agreement for those things.    A601.    The district court recognized that the "term sheet thus acknowledges that products/services may be ordered other than just those on the Price List." A9.

Guzik attempts to explain away this fatal flaw in its position by arguing that the price list includes both components and the total price for a tester.  Br. at 44.  But the Agreement states that Western Digital can order " ███████████████ " or " ████████████████████████████████████████ A200.  Even if the price list includes " ██████████████████ " and " █████████████ " for those systems, it does not include " ████████ " " ████████████████ ," and " ███████ " – all of which are included in the Agreement.  A200; A601.

Guzik also argues that the ambiguity of the scope term is evidenced by the parties' ongoing negotiations over what would be included in the purchase order commitment in the ancillary documents.  Br. at 6-11.  In particular, Guzik argues now in its opening brief that the parties' discussions related to the scope term establishes that "there was no meeting of the minds on this key issue of scope." Br. at 11.  But this argument defies common sense.  For one, the negotiations cited by Guzik were related to the ancillary documents that would include the terms of the Agreement, but into which both parties negotiated other terms to guide their ongoing business relationship.    A372-A402; A411-A442; A444-A469; A471-

A497; A499-A500; A502-A509; A511-A534; A536-A537; A539; A541-A564. And, as noted above, prior to Guzik replacing its counsel, at no time did either party state that the Agreement was not binding.

Moreover, Guzik's actions belie its words. Despite multiple exchanges that began on the weekend when the Agreement was executed during which Western Digital made clear that the Agreement was not limited only to purchase orders for goods on the 2013 price list (Br. at 6-11), Guzik did not urge the district court to proceed with the trial or argue that no settlement had in fact been reached because a "key issue" was in dispute. Rather, Guzik did the exact opposite—it appeared in court and represented that the parties had "reached an agreement with respect to the main terms", agreed over ten days later to jointly submit a document to the district court stating that the parties "had signed a settlement agreement", and remained silent when the district court entered a Minute Order confirming that the "Case has settled." A163-A164; A168; A165. Guzik did all of these things *after* Western Digital made clear that it would hold Guzik to the plain language of the Agreement under which purchase orders are not limited only to the items identified on the 2013 price list. A404. This conduct establishes either that Guzik knew the scope term was not ambiguous on its face, knew that the term was not "necessary" or material, or both. *See Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 49 (9th

**CONFIDENTIAL MATERIAL OMITTED**

Cir. 1988) ("[C]onduct inconsistent with a refusal of the terms raises a presumption of assent upon which others may rely.").

Finally, Guzik's argument that the Agreement is indefinite is refuted by Guzik's own proposed replacement "nine points" contract. While arguing now that the signed eight-page Agreement (together with the ten-page 2004 contract it incorporates) is fatally deficient and ambiguous, Guzik's last proposal to Western Digital insisted that the parties use only a single-page document that alone would encompass the parties' entire settlement of the action. A636 ("My instructions are to seek final resolution with Western Digital based solely on the nine-point proposal . . . ."). In that document Guzik proposed vague and broad language for the scope of purchase orders under the Agreement, that contradicts its representations to this Court that it always understood the parties' agreement to limit purchase orders to the 2013 price list. Specifically, Guzik included the following term in its "nine points" document:



A221. This term does not limit the goods and services that will count toward the requisite annual payments to be only those found on the 2013 price list, but instead

<u>CONFIDENTIAL MATERIAL OMITTED</u>

encompasses "███████████████████████████████████" without

constraint.  *Id.*

In short, there is nothing ambiguous about the terms of the Agreement

addressing the scope of the purchases that will apply toward Western Digital's

commitments.  Guzik's argument to the contrary is unavailing and relies on a term

that goes only to price and never mentions the scope of the goods that will count,

and it flies in the face of the clear language of the scope terms that never limit the

purchase orders to the Guzik price list.  Guzik's own conduct further reveals its

arguments now to be litigation-driven and not an accurate reflection of its

interpretation of the Agreement when it was signed.  For all of these reasons, its

proposed construction is not a reasonable one that could support a finding of

ambiguity.  *See S. Cal. Edison Co.*, 37 Cal. App. 4th at 848; *Kashmiri v. Regents of

Univ. of Cal.*, 156 Cal. App. 4th 809, 842 (2007) ("The interpretation of a contract

'must be fair and reasonable, not leading to absurd conclusions.'").

### 2. Even If It Were Ambiguous, the Purchase Order Term Goes to the Agreement's Value and Cannot Render the Agreement Unenforceable

Guzik contends that, if the Court accepts its argument that the scope of

purchase orders that will count is ambiguous, this leads inexorably to the

conclusion that the Agreement as a whole is unenforceable.  This, again, is not the

law.

43

As the Ninth Circuit explained in *Facebook*, "a term may be 'material' in one of two ways:  It may be a necessary term, without which there can be no contract; or it may be an important term that affects the value of the bargain. Obviously, omission of the former would render the contract a nullity." *Facebook*, 640 F.3d at 1037.  But, if the term goes to value, its indefiniteness would not nullify the entire agreement:

> But a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages.

*Id.* at 1038.  Finding that this "is not a very demanding test," the court held that even the much shorter and vaguer term sheet in that case "easily passes it." *Id.*; *see also Hennefer v. Butcher*, 182 Cal. App. 3d 492, 500 (1986); ("The defense of uncertainty has validity only when the uncertainty or incompleteness of the contract prevents the court from knowing what to enforce."); *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) ("The defense of uncertainty is disfavored, and the court should enforce an agreement if it appears the parties intended to enter into a contract and the outlines of the agreement are sufficiently definite that the court knows what is to be enforced.").

Here, the manufactured dispute concerning the scope of purchase orders under the Agreement goes only to the value of the Agreement and cannot be used

**CONFIDENTIAL MATERIAL OMITTED**

to negate the Agreement as a whole.  Under either parties' reading of the Agreement, Guzik will get purchase orders totaling precisely the same amount – ███████.  The only questions would be *when* that obligation is complete, and *when* the annual breakouts of the total are met.  Should Guzik believe at some point that, despite issuing ████████ in purchase orders in total, Western Digital failed to issue all of the requisite purchase orders under the Agreement because it counted orders for goods that are not on the 2013 price list, Guzik could bring a suit for breach.  It would be a routine and relatively simple matter for a court to then engage in contract interpretation, ascribe a meaning to the allegedly ambiguous scope term of the Agreement, and then determine whether there was a breach and order specific performance or award damages if appropriate.  *See, e.g.*, *Frankel v. Bd. of Dental Examiners*, 46 Cal. App. 4th 534, 544 (1996) ("[W]here the language of the contract is ambiguous, it is the duty of the court to resolve the ambiguity by taking into account all the facts, circumstances and conditions surrounding the execution of the contract. . . .").  Under *Facebook*, this is all that is required to preclude the alleged ambiguity of the purchase order scope term from unraveling the entire Agreement and its comprehensive settlement of the action.  *See Facebook*, 640 F.3d at 1038.

Guzik attempts to distinguish *Facebook* because the agreement at issue delegated authority to draft subsequent agreements to one of the parties.  Br. at 37-

39 (citing *Facebook*, 640 F.3d at 1038).  But the decision in *Facebook* that an omitted term did not invalidate the whole agreement was based first on the independent conclusion that the material terms to be added later were terms impacting only the value of the deal, so the deal was not indefinite as a whole.  *Id.* The delegation to Facebook was independent support for the decision, but not the lynchpin as Guzik suggests.

The case law Guzik cites also does not support its argument.  In *Weddington Productions, Inc. v. Flick*, the court found that a one-page "Deal Memorandum" that included a provision noting that the parties would "formalize a Licensing Agreement" with "a fully paid up license" did not contain all material terms because it left key terms of the License Agreement to be negotiated later.  60 Cal. App. 4th 793, 799, 800, 819 (1998).  But *Weddington* does not hold that a contract is void whenever one party disputes the meaning of a given term.  *See id.*  The same is true for *Terry v. Conlan*, where the court found an oral agreement unenforceable because the parties agreed on the "goals of the settlement, without agreeing to the means that were material to the settlement," but never held that an allegation of ambiguity of a term selected by a party looking to escape a contract would suffice to nullify that contract.  131 Cal. App. 4th 1445, 1459 (2005).

Guzik's reliance on *Citizens Utilities Co. v. Wheeler* is also misplaced.  In that case, the court expressly did not review the trial court's "specific finding that

<u>CONFIDENTIAL MATERIAL OMITTED</u>

there was no meeting of the minds" but rather considered whether it could supply a missing *consideration* term and concluded it could not.   156 Cal. App. 2d 423, 432-33 (1957).  Here, there is no question that the Agreement is supported by legal consideration:   Western Digital must pay ███████ up-front and issue ███ ███ in purchase orders over ████ .

Because the scope term goes only to value, and not to the parties' fundamental bargain, it cannot be used as Guzik would like to erase the parties' settlement from existence.  The district court should be affirmed.

### E.    Guzik's Complaints That the District Court Did Not Consider Its Evidence Are Unfounded

Guzik argues that the district court committed reversible error by failing to consider its evidence purporting to show how the parties interpreted the Agreement.  This argument fails on both the law and the facts.

California Civil Code § 1624(b)(3)(D) requires that to establish a contract only "a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker," and not extrinsic evidence reflecting what one party thought that writing meant.  Similarly, California Civil Code § 1638 states that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  And under California Civil Code

§ 1639, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."

Accordingly, as noted above, the interpretation of a contract should be evaluated *objectively* without relying on a party's subjective intent. *See Founding Members*, 109 Cal. App. 4th at 956 ("When a contract is reduced to writing, the parties' [mutual] intention is determined from the writing alone if possible.").

Here, as shown above, the parties' settlement was documented in great detail in the Agreement. The Agreement is clear and explicit, involves no absurdities, and is sufficient on its own to set forth the parties' intentions. Accordingly, there was no need for extrinsic evidence in this action. Guzik's complaints that its submitted evidence did not change the outcome, or that Western Digital did not also submit its own unnecessary evidence of subjective intent, are of no moment.

Guzik's argument that the district court improperly relied on attorney argument instead of evidence is also baseless and unsupported in the record. Br. at 47-54. Western Digital submitted ample evidence on which the district court relied to find a binding settlement agreement. *See, e.g.*, *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) ("The substantial evidence test requires only that there be evidence that a reasonable mind might accept as adequate to support a conclusion."). Most importantly, Western Digital submitted the Agreement—the most relevant piece of evidence—and additional documentary evidence of

48

communications between the parties and with the district court.   A194; A199-A207.   In addition, Western Digital submitted the sworn declaration of its attorney, Douglas E. Lumish, who was a percipient witness to many of the in-person settlement negotiations, the email communications between the parties, other settlement discussions with Guzik's counsel, the multiple joint statements submitted to the district court, and the hearings at which Guzik's counsel repeatedly confirmed the settlement.   A193-A197.

Further to the evidence submitted by Western Digital, the district court also had before it Guzik's evidence in opposition to Western Digital's motion.   Far from refusing to "fairly analyze[]" Guzik's evidence, as Guzik now suggests (Br. at 46), the judge expressly stated that he had considered the evidence submitted by both sides.   At the outset of the hearing on Western Digital's motion, the court stated:

> I have received and done my very best to study carefully all of the briefing on this matter, including the detailed correspondence that you all included in your exhibits.   And I do appreciate your submitting them because, for what it's worth, I find that the devil here is in the details.   So I think that was very helpful, and I want to thank you for that.

A641.   And, contrary to Guzik's argument that the district court refused to consider extrinsic evidence related to the Agreement (Br. at 41), counsel for both sides proceeded to discuss much of that evidence during the hearing and Guzik was never blocked from addressing any evidence in the record.   A673-A692 (counsel

<u>CONFIDENTIAL MATERIAL OMITTED</u>

for Guzik "walk[ing] [the court] through what the evidence is"); A692 (counsel for Guzik stating "I appreciate the Court has read everything and I thank you for being patient to let me walk you through the evidence").

Guzik also claims that the district court improperly relied on attorney argument when finding that the Agreement includes goods arising from non-recurring engineering projects that are not on the 2013 price list. Br. at 51. But the objective evidence of the Agreement states exactly this: "███████████████ ████████████████████████████████████████████." A199. The price list, of course, does not identify any prices for "goods arising" from NRE projects. A601. Guzik argues that the price list identifies four products "as having NRE fees associated with them . . . ." Br. at 52. But the plain language of the price list refutes this representation by stating expressly █████████████ ████" for each of the four items Guzik identified. A601.

The cases cited by Guzik again miss the mark and fall far short of establishing reversible error. *See Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 503 (Fed. Cir. 2014) (reversing summary judgment of invalidity when the trial judge applied an incorrect legal standard by concluding that the clear and convincing standard of proof of patent indefiniteness could be met with "no evidence of the understanding and knowledge of persons of skill in the

field . . . .");[4] *Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1580 (Fed. Cir. 1990) (vacating summary judgment of non-infringement where there had been no evidence of the accused product before the trial court).

Moreover, in all, Guzik only identifies one passage in the Order where the court actually cited a statement by Western Digital's counsel. And that statement was expressly accepted as an uncontested fact by Guzik's counsel. Specifically, the Order cites the January 23, 2014 motion hearing transcript (Br. at 50 n.9), in which Western Digital's counsel stated: "The parties agree that the price sheet, the Guzik 2013 price list . . . [t]hat's going to include the V-2002 testers that are the bulk of what Western Digital will buy and wants to buy from Guzik. I don't think that's in dispute." A645. In fact, it was not in dispute. In response to a question from the court about the relative significance of other Guzik testers not identified on the price list (A683-A684), Guzik's counsel stated:

> And they put in their brief, well, the repairs aren't going to be that big a deal. And most of our – most of our purchases will be the V-2002. There's no declaration, ***but I'll accept it***.

A685. Given the parties' agreement, there is no basis here to reverse the district court's judgment. *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir. 1983) ("[O]nce a matter is stipulated, it is conclusively proven[.]").

---

[4] The *Elcommerce* decision was vacated on June 6, 2014. *Elcommerce.com, Inc. v. SAP AG*, No. 2011-1369, 2014 U.S. App. LEXIS 11068, at *1-2 (Fed. Cir. June 6, 2014). Thus, it is no longer precedential.

**CONFIDENTIAL MATERIAL OMITTED**

Similarly, Guzik argues that the district court relied on the same attorney argument to support its statement that "repairs and maintenance" will account for a small portion of the required ███████ in future purchases.  Br. at 52-53.  But the district court did not cite to any attorney statements for this finding and, again, as shown above this was an agreed fact that did not need to be proven with further evidence.  A685 ("And they put in their brief, well, the repairs aren't going to be that big a deal . . . There's no declaration, ***but I'll accept it***.").

The record is clear that the district court considered extensive evidence, including all of the evidence submitted by Guzik.  That it was not persuaded by that evidence in Guzik's favor is not a ground for reversal.  *See Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) ("[T]he standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence.").

## IV.  GUZIK NEVER REQUESTED AN EVIDENTIARY HEARING, AND THERE IS NO NEED FOR ONE NOW

Retreading the same arguments made in other sections of its brief, Guzik argues, in the alternative, that the Court should reverse and remand for an evidentiary hearing.  This request should be rejected for at least three reasons.

First, Guzik never requested an evidentiary hearing on Western Digital's motion below.  Therefore, its argument here for an evidentiary hearing was waived.  *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994) ("By

failing to request an evidentiary hearing in the district court, the defendants waived their right to raise the issue on appeal."); *Golden Bridge*, 527 F.3d at 1322-23.

Second, an evidentiary hearing would be futile and a waste of judicial resources. Guzik has not identified any evidence that it would present in an evidentiary hearing that was not already submitted to the district court. As set forth above, the district court considered *all* of the evidence submitted to it, and Guzik had ample opportunity to submit whatever evidence it thought was relevant in response to Western Digital's motion to enforce the settlement. Accordingly, remanding for an evidentiary hearing now would do little more than permit Guzik a second opportunity to make the same arguments, based on the same evidence, presumably to achieve the same result.

Finally, as discussed above, the contract interpretation issues that lie at the heart of this appeal are legal issues reviewed by the Court *de novo*. *Semitool*, 444 F.3d at 1341 (contract interpretation is a matter of law to be review *de novo*). Thus, this Court could now weigh the same evidence Guzik incorrectly contends was "ignored" by the district court, and reach its own conclusions. There is no legitimate need for Guzik to have a second chance to supplement the evidentiary record in hopes of bettering its position.

## CONCLUSION

For the foregoing reasons, the district court's Order enforcing the settlement and the ensuing judgment dismissing the underlying action should be affirmed.

Dated: August 14, 2014                    Respectfully Submitted,

*/s/ Douglas E. Lumish*
Douglas E. Lumish
Richard G. Frenkel
Michelle P. Woodhouse
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025-1008
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

James L. Day
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile:  (415) 395-8095

*Counsel for Defendants- Appellees*
*Western Digital Corporation et al.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2014, I electronically filed the Confidential and Non-Confidential version of the Brief of Defendants-Appellees Western Digital Corporation, et al. with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

I further certify that I caused copies of the Confidential Version of the Brief for Defendants-Appellees Western Digital Corporation, et al. to be served via FedEx next-day delivery upon the following:

> Daniel E. Alberti
> M. Miller Baker
> Clint A. Carpenter
> A. Marisa Chun
> Eric W. Hagen
> MCDERMOTT WILL & EMERY, LLP
> 275 Middlefield Road, Suite 100
> Menlo Park, CA 94025
> 650.815.7400

Dated: August 14, 2014                    */s/ Douglas E. Lumish*
                                          Douglas E. Lumish

1

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

Counsel for Defendants-Appellees Western Digital Corporation, et al. hereby certify that:

1.      This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B): The Brief contains 12,783 words (as calculated by the word processing system used to prepare this brief), excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.      This Brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The Brief has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman style font.


Dated: August 14, 2014                    Respectfully submitted,


                                          */s/ Douglas E. Lumish*
                                          Douglas E. Lumish

1